651 A.2d 212

**GIANT EAGLE, INC., Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BENSY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 16, 1994.

Decided Nov. 30, 1994.

596

Sylvester A. Beozzo, for petitioner.

Allan J. Opsitnick, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

Giant Eagle, Inc. (Employer) appeals an order of the Workmen's Compensation Appeal Board (Board) affirming the Referee's decision insofar as it denied the Employer's petitions for the suspension and termination of Michael Bensy's (Claimant) workmen's compensation benefits and reviews of the reasonableness of Claimant's medical treatment.

Claimant was employed by Giant Eagle, Inc., as a part-time loader. On January 12, 1989, he injured his neck and back in the course of employment when the truck he was loading pulled away, causing him and the forklift he was using to fall out of the back of the truck. On February 23, 1989, Employer executed a notice of compensation payable and Claimant began receiving workmen's compensation benefits. Benefits were suspended as of October 15, 1991, when Claimant returned to work in a modified position as a watchperson. A supplemental agreement acknowledging that Claimant was no longer entitled to receive benefits was signed on October 26, 1990, because he returned to work at no loss of wages.[1]

Beginning in January of 1989, Claimant sought medical treatment for his neck and back pain three times a week from Leonard Merkow, M.D. At each visit, Claimant's treatment consisted of hot moist heat and electrical stimulation, the injection of Floricet and Flexeril, as well as intramuscular

---

1. Claimant continued to work in that position until July 1, 1991, but quit when Employer's doctor medically cleared him to perform his regular job and his doctor did not. Claimant never filed a petition to reinstate his weekly benefits.

injections of ten milligrams of Nubain/Visteril in the lower back and Procaine/Robaxin in the neck.

Over the next several years, Employer filed petitions seeking to suspend,[2] terminate or review the medical benefits that Claimant was receiving. They were:

- a petition filed on August 22, 1989, seeking to suspend Claimant's compensation benefits, alleging that Claimant was offered a light-duty position without loss of earning power on July 24, 1989, and that Claimant had refused this position;

- a petition to review Claimant's medical benefits filed on March 15, 1991, alleging that Claimant was examined by an orthopedic surgeon, Robert P. Durning, M.D., who "determined that passive physical therapy treatment offered no hope of a remedy and could be discontinued without any adverse effect on [Claimant's] condition," and that any such therapy rendered after January 25, 1991, was neither reasonable nor necessary; and

- a petition to terminate Claimant's medical benefits filed on June 17, 1991, stating that based upon the January 25 examination of Claimant, Dr. Durning had determined that Claimant had fully recovered from his injury.

All of these petitions were consolidated for hearing.

Numerous hearings took place over the years. During these hearings, Employer offered the deposition testimony of Dr. Durning, board certified in orthopedic surgery, and Morris Z. Gardner, M.D., board certified in radiology, concerning Claimant's physical condition. After his initial examination of Claimant on July 13, 1989, Dr. Durning testified regarding the first petition to suspend benefits for the closed period between July 24, 1989, and October 15, 1991, when Claimant went back to work in a modified position. He stated that there was no

2. On November 1, 1990, apparently overlooking that a supplemental agreement had been filed, Employer had filed another petition to suspend Claimant's compensation benefits, contending that Claimant had "returned to modified duties at the same or greater wage than his pre-injury wage," and that Claimant had "continued to work since [October 15, 1990,] without a loss of earning power and has failed to sign a Suspension Agreement."

orthopedic or musculoskeletal basis for Claimant's contended aches and pains, and that based upon his examination of Claimant, he believed that Claimant was able to perform the jobs of label stamper and watchperson. (R.R. 585a–583a).

After the Employer filed the petitions to terminate benefits and to review the reasonableness of the medical treatment Claimant was receiving, and after examining Claimant for a second time on January 25, 1991, Dr. Durning again testified, opining that Claimant had fully recovered from his work injury. (R.R. 488a). He also testified that he had viewed the CT scans of Claimant's cervical spine, lumbar spine and head, as well as the x-rays of his lumbosacral and cervical spines, and that he could find nothing resulting from Claimant's work injury which would account for the pain of which Claimant was complaining. (R.R. 484a–486a). As to the reasonableness of the medical treatment that Claimant was receiving, Dr. Durning testified that its program was extraordinarily unconventional, poorly designed, ineffective, grossly inappropriate and should be discontinued. Additionally, he stated that the medication that Dr. Merkow was administering to Claimant could lead to addiction. (R.R. 495a–497a).

As to the termination petition, Employer's other medical expert, Dr. Gardner, testified by deposition that he had reviewed Claimant's emergency room records from the day of the accident and could find nothing to connect Claimant's neck pain with his work-related accident. (R.R. 753a–756a). He also testified that he had reviewed the CT scans and x-rays of Claimant's cervical and lumbar spines, and that he had observed a narrowing of the intervertebral space between the sixth and seventh vertebrae of Claimant's back. He indicated that such a condition took a while to develop and existed before Claimant's accident. (R.R. 760a–764a).

In response, Claimant testified that, because of his work-related injuries, he could not perform the tasks associated with the positions of label stamper or watchperson because his pain prevented him from sitting or standing for more than one hour. (R.R. 17a). Additionally, he stated that he could not engage in strenuous activities, and that, over the course of the

hearings, his condition worsened because of his headaches, cracking in his neck and low back pains. He also testified as to his inability to engage in normal daily activities as well as sports-related activities, stating that he could not lift weights, play softball or go fishing. (R.R. 28a–31a). In addition, for the continued payment of his medical treatments three times a week from Dr. Merkow, Claimant requested that Employer reimburse him for the 20,000 miles he traveled over the years from his home to obtain this treatment.

In support of his contention that his physical condition precluded him from accepting the modified duty positions of label stamper or watchperson, and that his benefits should not be terminated, Claimant offered the testimony of Dr. Merkow, who testified that he had begun treating Claimant for his work injury on January 18, 1989. (R.R. 164a). He also testified that since that date, he had been treating Claimant three times a week. He testified that initially he had diagnosed Claimant as having an acute sprain and strain of the neck and back. (R.R. 167a). However, following Claimant's return to light-duty work with Employer, he diagnosed Claimant as having a chronic sprain and strain of the cervical and lumbar spine, as well as post-traumatic osteoarthritis and a herniated disc. Dr. Merkow attributed the worsening of Claimant's condition to his performance of the light-duty work. (R.R. 251a–252a). He also opined that Claimant was totally disabled and could not return to his regular job or a light-duty job with Employer. (R.R. 260a). Despite admitting that the drug Nubain has the same potency as morphine, and that the other medicines he prescribed could cause a physical or psychological addiction, Dr. Merkow also testified that Claimant's treatment was reasonable and customary. (R.R. 327a–329a).

On cross-examination, Dr. Merkow admitted that he had been convicted of 47 counts of Medicaid fraud. (R.R. 268a–270a). Additionally, he admitted that he had been reprimanded by the State Board of Medicine, and that his medical license had been suspended from March 23 to April 20, 1988, for allegedly prescribing medication which was outside the scope of accepted medical practice. (R.R. 271a, 280a). More-

over, he admitted that the *curriculum vitae* he submitted were false in that he had not had staff positions in two of the three hospitals listed, that his Wisconsin state medical license had lapsed, and that he was no longer a member of the American Medical Association or the Pennsylvania Medical Society. (R.R. 278a–283a).

Dr. Merkow also admitted that in addition to Claimant's work-related injury, he was also treating Claimant for a left shoulder injury, as well as post-traumatic arthritis due to an injury sustained at Zayre Department Store when a stack of chairs purportedly fell on Claimant knocking him to the ground. He testified that Claimant received treatment for those injuries twice a week, Tuesday and Thursday. Those treatments were in addition to his thrice-weekly treatments of work-related injuries that were scheduled on Monday, Wednesday and Friday. (R.R. 179a–180a).

To counter Claimant's assertions that he could not perform physical activities, Employer introduced the testimony of a number of individuals who observed Claimant engaged in a variety of activities inconsistent with Claimant's testimony as to his physical condition. They were:

• Eugene J. Mahofski, a private investigator. Mr. Mahofski testified that while he was investigating Claimant, he had made a film which contained some of the activities of Claimant after his work injury. On one day, Mr. Mahofski had observed Claimant loading his truck with fishing equipment and leaving his residence with five people in the truck, and later, casting a fishing rod at a state park. Mr. Mahofski also testified to a portion of the film in which Claimant was seated in his truck for approximately ten to fifteen minutes doing some work on the dashboard area of his vehicle. Additionally, he testified as to another portion of the tape in which Claimant was working on a hot tub in his yard, as well as a subsequent portion of the tape where Claimant was picking up a two-year old child over his head. (R.R. 82a–94a).

• J.R. McGrath, a previous roommate of Claimant, who testified that during the summer following Claimant's inju-

ry, he and Claimant had gone horseback riding on two occasions for at least two hours each time. Further, Mr. McGrath stated that he, Claimant, and two other individuals had also played volleyball in the swimming pool at Claimant's apartment complex. Mr. McGrath also testified that in February of 1990, Claimant moved into his home, and that he had observed Claimant lifting furniture in the process. (R.R. 642a–646a).

● Deborah LiSanti, the manager of the apartment complex where Claimant had lived, and Patrick LiSanti, her husband. Mrs. LiSanti testified that she has seen Claimant swimming laps and playing volleyball in the swimming pool of the apartment complex during the summer of 1989. (R.R. 677a–680a). Mr. LiSanti stated that he, too, had seen Claimant swimming in the pool, and that he had also seen him moving into the apartment carrying large boxes and furniture. (R.R. 708a). Furthermore, Mr. LiSanti stated that he had also seen Claimant playing softball from May until July, 1989. (R.R. 713a–717a).

At the close of testimony, the Referee made the following findings in reference to each of the witnesses:

| Employer's Witnesses | Findings |
| --- | --- |
| * Eugene J. Mahofski | * Believable and credible |
| * J.R. McGrath | * Not believable and not credible |
| * Deborah LiSanti | * No finding |
| * Patrick LiSanti | * Not believable and not credible |
| * Dr. Durning | * Not believable and not credible on direct examination and cross-examination of June 13, 1994; believable and credible on cross-examination of February 23, 1990 |
| * Dr. Gardner | * Not believable and not credible on direct examination |

| Claimant's Witnesses | Findings |
| --- | --- |
| * Claimant | * Believable as to medical treatment and medical problems; not credible as to his physical work capacity and activities |

| Claimant's Witnesses | Findings |
|---|---|
| * Leonard Merkow, M.D. | * Not credible on direct examination; believable and credible on cross-examination |

Based on these patchwork findings, the Referee dismissed all of Employer's petitions finding that Employer had not met its burden either to suspend or terminate and that the medical bills were unreasonable. In addition, he ordered Employer to pay Claimant $275.14 per week as of June 13, 1991, until his disability ceased and "pay *some* of [C]laimant's medical bills/expenses, the same being reasonable and necessary" (emphasis added) incurred in obtaining treatment from Dr. Merkow.

Employer appealed to the Board, challenging the Referee's findings of fact and conclusions of law and filing a motion for a remand or hearing *de novo* pursuant to Section 425 of the Workmen's Compensation Act (Act),[3] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 856, because the Referee's findings were capricious and mandated a new hearing. Attempting to make sense of what transpired previously, the Board affirmed the Referee's decision in part and reversed it in part. Specifically, the Board:

- affirmed the Referee's dismissal of the Employer's petition to suspend benefits between July 24, 1989, and October 15, 1990, because the Referee made a credibility determination that Employer had failed to sustain its burden.
- found that, as to the petition to review medical expenses:

3. Section 425 of the Act provides:
    If on appeal it appears that the referee's award or disallowance of compensation was capricious or caused by fraud, coercion, or other improper conduct by any party in interest, the board may, grant a hearing de novo before the board, or one or more of its members or remand the case for rehearing to any referee. If the board shall grant a hearing de novo, it shall fix a time and place for same, and shall notify all parties in interest.
    As soon as may be after any hearing by the board, it shall in writing state the findings of fact, whether those of the referee or its own, which are basic to its decision and award or disallow compensation in accordance with the provisions of this act. (Footnote omitted).

The Referee found that some medical expenses were work-related to the work injury and some were not. No attempt was made to distinguish between the two. It might be appropriate for the Board to remand the case to clarify the end result. The Board is unwilling to do so but believes that if Claimant desires that certain bills be paid, Claimant should file a penalty petition with regard to said bills.

• reversed on the Referee's award of travel expenses because Claimant had not sustained his burden; and

• reversed the Referee's reinstatement of Claimant's compensation as of October 15, 1990, both because the Claimant had never requested reinstatement and no substantial evidence existed to grant such a request.

The Board did not specifically address Employer's motion for a remand or a hearing *de novo*. Only Employer appealed the Board's order to this court.

Employer contends that the Referee's finding of Dr. Durning's testimony to be incredible on direct and credible on cross-examination is internally inconsistent, and thus, should be construed as a determination that his testimony was equivocal. As such, Employer contends that this court should review Dr. Durning's testimony as a matter of law, and that such a review will reveal that it is unequivocal and sufficient to sustain Employer's burden with respect to the suspension, review and termination petitions. Alternatively, Employer argues that pursuant to Section 425 of the Act, it is entitled to a remand or hearing *de novo* before a new Referee because the Referee's determination was capricious and a willful disbelief of otherwise credible evidence. In effect, these contentions are both the same in that Employer is contending that the Referee's findings regarding Dr. Durning and other witnesses are so inconsistent that they are capricious and should be reviewed as a matter of law, and that the Board should have remanded for a rehearing.

Section 425 of the Act provides, in relevant part, that "[i]f on appeal it appears that the referee's award or disallowance of compensation was capricious ... the board may grant

a hearing *de novo* before the board, or one or more of its members or remand the case for rehearing to any referee." To be capricious, the Referee's decision must not be merely an error in judgment course, but "the adjudication must be so flagrant as to be repugnant to a man of reasonable intelligence." *Bullock v. Building Maintenance, Inc.*, 6 Pa.Commonwealth Ct. 539, 543, 297 A.2d 520, 522 (1972). Whether to grant or deny a rehearing is within the discretion of the Board, and our scope of review is limited to determining whether the Board has abused that discretion. *Douglas v. Workmen's Compensation Appeal Board*, 32 Pa.Commonwealth Ct. 156, 377 A.2d 1300 (1977). However, if the Referee's decision is capricious and the Board has not remanded, that would constitute an abuse of discretion by the Board.[4]

We are cognizant that an appellate court's role is not to reweigh the evidence or review credibility of witnesses, only to see if the Referee's opinion has the requisite support in the record. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992). While we are aware of and recite that rubric constantly in our opinions, it is not without limits. Where the opinion is without a rational basis or scheme so as to be capricious, we are bound to reverse. We believe the decision in this case is the rare case that meets that criteria.

The Referee failed to set forth any findings of fact with respect to the medical witnesses who testified. Instead, he inexplicably states that he finds the direct testimony of all of these witnesses as being not believable and not credible and picks and chooses as to the credibility of parts of testimony of other witnesses with no rhyme or reason. The Referee found that he does believe the cross-examination testimony of Dr.

---

4. Additionally, pursuant to Section 706 of the Judicial Code, 42 Pa.C.S. § 706, "[a]n appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances." Under this provision, this court has previously remanded cases in which the Board's order is contradictory and unintelligible. *See Newton v. Workmen's Compensation Appeal Board (Dept. of Labor and Industry)*, 82 Pa.Commonwealth Ct. 534, 475 A.2d 1353 (1984).

Durning and Dr. Merkow, despite the fact that there are very few relevant facts contained in these portions of the testimony. In essence, we can make no sense of the patchwork of credibility findings as to portions of each individual's testimony. Not only do the Referee's credibility findings make no sense, neither does his award: reinstatement of Claimant's weekly benefits when none was requested; ordering the payment of some medical benefits without delineating which ones; awarding travel expenses without having any evidence to make that determination other than Claimant's testimony that he wanted to be reimbursed for money spent travelling 20,000 miles to see Dr. Merkow. We believe the findings are so capricious that no reasonable person could have made such findings of fact or conclusions of law. While the Board attempted to mitigate by reversing some of the decision's more egregious errors, the findings tainted all aspects of the Referee's decision. As such, we find the decision below, as well as the bases for that decision, to be generally not rational or intelligible.[5]

Not wishing to unduly chide the Referee here because all of us, when we step back, sometimes (hopefully, very rarely) cannot explain why we did something, we nonetheless determine that the Referee's decision is capricious because it is neither rational nor reasoned and, consequently, the Board abused its discretion in not ordering a rehearing. We vacate the order of the Board with further instructions to remand this matter to a different Referee only for a rehearing on the first suspension petition, the petition for termination filed on June 17, 1991, to consider the relief requested in that petition, and the petition for review dated March 15, 1991, challenging the request for reasonableness of the medical expenses incurred.

## ORDER

AND NOW, this 30th day of November, 1994, the order of the Workmen's Compensation Appeal Board dated November

---

5. Given the disposition of this case, it is unnecessary to address Employer's other contentions at this time.

29, 1993, No. A92–3295, is vacated to further remand to a different referee for a rehearing on Respondent's first suspension petition, the petition for termination filed on June 17, 1991, to consider the only relief requested, and the petition for review dated March 15, 1991, challenging the request for reasonableness of the medical expenses incurred.

Jurisdiction relinquished.