# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raymond Argro, : 
                     Petitioner      : 
                                     : 
        v.                           :   No. 1954 C.D. 2014
                                     :   Submitted:  April 2, 2015
Workers' Compensation Appeal         : 
Board (Ardmore Automotive, Inc.),    : 
                     Respondent       :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  August 12, 2015**


Raymond Argro (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board).  The Board affirmed the decision of a Workers' Compensation Judge (WCJ), which denied Claimant's claim petition.  We now affirm.

## I.     BACKGROUND

On January 23, 2012, Claimant's employer, Ardmore Automotive, Inc. (Employer), directed Claimant to shovel snow from a sidewalk.  (Reproduced Record (R.R. at 1.)  On January 24, 2012, Claimant lifted boxes for Employer. (*Id.*)  On January 25, 2012, Claimant sought treatment from his primary care physician, Edward Stankiewicz, M.D.  (*Id.* at 66.)  Claimant complained of severe lower back, left hip, left leg, and left knee pain.  (*Id.*)  Claimant filed a claim petition seeking workers' compensation benefits.   Claimant alleged that he

sustained an injury during his work on January 23, 2012, and January 24, 2012. (*Id.* at 1.) Employer filed an answer, denying that Claimant's pain was caused by a work-related injury. The matter was assigned to a WCJ, who conducted a hearing.

At the hearing before the WCJ, Claimant testified that on January 23, 2012, he felt a pulling pain in his back after he had been shoveling for approximately three-to-four hours. (*Id.* at 16.) Claimant informed his supervisor, Tim Moore, that he was in pain, and Mr. Moore instructed Claimant to "take a break." (*Id.*) Claimant attempted to return to shoveling, but the pain in his back increased. (*Id.* at 16-17.) The following day, January 24, 2012, Claimant continued to feel pain in his back. (*Id.* at 17.) Another employee of Employer asked Claimant to help her move some boxes. (*Id.*) As he was picking up the boxes, Claimant's back pain increased. (*Id.*) Claimant informed Maureen Mandia, Employer's office manager, of the injury. (*Id.* at 17-18, 353.) On January 25, 2012, Claimant's pain had increased to the point where he was unable to go to work. (*Id.* at 18.) Claimant went to Dr. Stankiewicz for treatment. (*Id.*) Claimant stated that he takes Percocet for his ongoing back pain. (*Id.* at 44.) He explained that he did not take any pain medication, other than over-the-counter medication, prior to January 25, 2012. (*Id.*) Claimant also uses a cane when walking. (*Id.* at 311.)

Claimant indicated that he had sustained a back injury in 2006, which ultimately required surgery. (*Id.* at 21, 38.) He received workers' compensation benefits for that injury and was out of work for three-to-four years. (*Id.* at 22.) Claimant testified that he did not continue to have back pain after his surgery. (*Id.* at 39.) Claimant also admitted that he had suffered back injuries in 2009 and 2010. (*Id.* at 327.) After a series of other jobs, Claimant applied to work for

Employer. (*Id.* at 23-24.) Claimant's application for employment contained inaccurate information. Specifically, Claimant misrepresented how long he had worked for a previous employer as well as his criminal history. (*Id.* at 322-23.)

Tim Moore, Jennifer Hoy, and Maureen Mandia testified before the WCJ on behalf of Employer. Mr. Moore testified that Claimant did not inform him that he had injured himself. (*Id.* at 345.) Claimant was asked to shovel a fifty to seventy-five foot sidewalk. (*Id.*) There was approximately one-to-two inches of snow, and Mr. Moore did not think it would have taken Claimant four hours to shovel. (*Id.*) Jennifer Hoy testified that she asked Claimant to help her move boxes on January 24, 2012. (*Id.* at 349.) Ms. Hoy and Claimant moved six or seven boxes in approximately five-to-ten minutes. (*Id.* at 350.) The boxes weighed about fifteen pounds. (*Id.* at 352.) Claimant did not indicate that he was in pain after moving the boxes. (*Id.* at 350-51.) Ms. Mandia testified that when Claimant was hired, Employer discovered that Claimant's employment application incorrectly indicated that Claimant did not have a criminal background. (*Id.* at 355.) Despite this inaccuracy, Employer did not terminate Claimant's employment. (*Id.*) Claimant never stated that he was unable to perform his work duties prior to his injury. (*Id.* at 357.) Ms. Mandia saw Claimant and Ms. Hoy carrying boxes, but she did not witness Claimant's injury. (*Id.* at 367.) Claimant reported his injury on January 30, 2012. (*Id.* at 354.)

Claimant presented the deposition testimony and medical report of Dr. Stankiewicz. Dr. Stankiewicz testified that he is a general practitioner. (*Id.* at 61.) He is not board certified. (*Id.* at 62.) Dr. Stankiewicz first treated Claimant for back pain in 2007. (*Id.* at 63.) Dr. Stankiewicz continued to treat Claimant for back pain until March 2011, after which he did not see Claimant again for six

3

months. (*Id.* at 64.) Claimant had chronic back pain, but he was "fully functional from a physical respect." (*Id.*) Claimant returned and sought treatment for a back injury in September 2011. (*Id.*) Claimant informed Dr. Stankiewicz that he had injured his back while detailing a car for Employer. (*Id.* at 64-65.) Dr. Stankiewicz diagnosed Claimant with a sprain of his lumbrosacral spine and back pain caused by an exacerbation of his preexisting back condition. (*Id.* at 65.)

Dr. Stankiewicz next treated Claimant for back pain on January 25, 2012. (*Id.* at 66.) At that visit, Claimant did not provide Dr. Stankiewicz with any information concerning the injury on January 23, 2012, and January 24, 2012. (*Id.* at 68.) Claimant later told Dr. Stankiewicz that Claimant shoveled snow for four hours on January 23, 2012, and carried boxes on January 24, 2012. (*Id.* at 69.) Dr. Stankiewicz opined that Claimant sustained a low back injury while shoveling snow and lifting boxes. (*Id.* at 71.) Based on the MRIs obtained before and after Claimant's work injury, Claimant developed a "new L5, S1 disc extrusion, which was compromising his left S1 nerve root" after his work injury. (*Id.* at 71, 73.) Dr. Stankiewicz has not released Claimant to return to work. (*Id.* at 73.) Claimant receives physical therapy, anti-inflammatories, and Percocet. (*Id.* at 73-74.) Claimant was also treated by a neurosurgeon and he received steroid epidural injections from a pain management specialist. (*Id.* at 74.)

Employer presented the deposition and medical testimony of Ira Sachs, D.O. Dr. Sachs testified that he is a board-certified orthopedic surgeon. (*Id.* at 158.) Dr. Sachs reviewed Claimant's medical records and performed an independent medical examination (IME) of Claimant on April 11, 2012. (*Id.* at 161.) Dr. Sachs opined that Claimant did not sustain a work-related injury or aggravate a preexisting injury on January 23, 2012, and January 24, 2012. (*Id.* at

4

162, 180.) During the IME, Dr. Sachs attempted to determine Claimant's range of motion, but Claimant would not flex or extend. (*Id.* at 169.) Dr. Sachs explained that even with his worst back patients, "they would be able to exhibit something, they would just not refuse to move at all." (*Id.*) Dr. Sachs could not find an objective reason for Claimant's refusal to move. (*Id.* at 169-70.) Claimant performed sitting straight leg raises which caused leg pain, but when Dr. Sachs performed a different test to corroborate those results, Claimant did not experience any pain. (*Id.* at 172.) Dr. Sachs noted that there was progression of Claimant's back injury from 2008 to 2009, but no progression between 2009 and 2012. (*Id.* at 174, 178-79.)

The WCJ issued a decision denying Claimant's claim petition. In so doing, the WCJ determined that Claimant's testimony was not credible. The testimony of Ms. Mandia, Mr. Moore, and Ms. Hoy was credible. The WCJ determined that Dr. Stankiewicz's testimony was not credible, and Dr. Sachs' testimony was credible. Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant then petitioned this Court for review.

## II. DISCUSSION

On appeal,[1] Claimant argues that the WCJ's credibility determinations are not reasoned, that the WCJ's opinion constitutes a "patchwork of findings"

---

[1] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. Further, "review for capricious disregard of material, competent evidence is an appropriate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002).

with no rational basis, that the WCJ capriciously disregarded evidence, and that the overwhelming weight of the evidence supports reversal.[2]

## A. Credibility Determinations[3]

Claimant first argues that the WCJ's credibility determinations are not reasoned as required by Section 422(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.[4] "[I]t has long been

---

[2] Claimant, in his statement of questions presented, identified the issues set forth above. Claimant does not discuss these issues in separate sections; but, rather, intersperses them throughout the entirety of his brief. *See* Pa. R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Nevertheless, the Court has attempted to glean the arguments for each issue from Claimant's brief.

[3] Throughout his brief, Claimant identifies a number of findings of fact with which he takes issue. His arguments concerning these findings relate to the WCJ's credibility determinations and the WCJ's supposed capricious disregard of evidence. Claimant does, however, appear to argue that finding of fact number 2 is not supported by substantial evidence. Finding of fact number 2 provides:

> Claimant, by and through counsel, filed a [c]laim [p]etition on or about February 7, 2012 setting forth the specific allegations of his work related injury, disability and timely notice to his employer. [Employer] filed a timely [a]nswer denying all material allegations in the [p]etition.

(WCJ Decision at 1.) Claimant contends that Employer admitted that Claimant had back pain and that Claimant was an employee of Employer. Although Claimant is correct that Employer did not deny all allegations, the WCJ's finding is harmless error. Employer's admissions are irrelevant to the determination of whether Claimant's pain was caused by a work-related injury.

[4] Section 422(a) of the Act provides, in relevant part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon

**(Footnote continued on next page…)**

6

recognized that the WCJ has the exclusive authority to make findings of fact and credibility determinations." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). These findings, however, must be supported by adequate reasons for accepting or rejecting conflicting evidence. *Id.* Where the WCJ has observed witnesses testify, "it is appropriate for the [WCJ] to base his or her determination upon the demeanor of the witnesses." *Id.* If a WCJ does not observe a witness's demeanor, the WCJ must articulate an actual objective basis which supports the credibility determination. *Id.*

Claimant contends that the WCJ's determination regarding Claimant's credibility is not reasoned. The credibility determination provided:

> This WCJ has considered the testimony of . . . Claimant, together with all other evidence of record in this matter, and finds . . . Claimant's testimony not credible. In making the aforesaid credibility determination, the following is noted: (a) this WCJ had the opportunity to observe . . . Claimant's manner and demeanor at the hearing of November 27, 2012 and determined that such was not that of a credible witness; (b) Dr. Stankiewicz admitted that when he saw Claimant on January 25, 2012, the Claimant did not tell him about the alleged work incidents/injuries of January 23, 2012 and

_____

**(continued…)**

> which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

7

January 24, 2012; (c) . . . Claimant admitted at the hearing of November 27, 2012 that his written responses to questions contained in the application for employment presented to him by . . . [Employer] concerning criminal conviction and length of employment with [Claimant's previous employer, Installation Material Corporation,] were untrue; (d) . . . Claimant was less than forthcoming concerning Dr. Stankiewicz's treatment of his back condition from January 26, 2009 until January 25, 2012 and the use of the prescribed medication Percocet during that period; and, (e) . . . Claimant's testimony is not consistent with the credible testimonies of Ms. Mandia, Ms. Hoy and Mr. Moore.

(WCJ Decision at 6.) Claimant acknowledges that a WCJ may base a credibility determination on a witness's demeanor, but he asserts that the determination regarding Claimant's credibility was made contrary to undisputed facts.[5]

Claimant testified before the WCJ, and, therefore, it was in the WCJ's purview to reject Claimant's testimony based solely on Claimant's demeanor. *Daniels*, 828 A.2d at 1052. The WCJ, in fact, went further by providing a number of objective reasons supporting his determination that Claimant was not credible. Claimant seems to suggest that because some of these reasons were "confirmed" by Claimant during his testimony before the WCJ, Claimant must be considered credible. Claimant does not, however, point to a rule which precludes a WCJ from finding a claimant not credible based on the claimant's own testimony. Moreover, the WCJ was not required to list objective reasons for his determination, because his determination was supported by his observation of Claimant's demeanor.

---

[5] Claimant also appears to assert that, because portions of Claimant's testimony were the same as some of the credible witnesses, the WCJ must articulate which portions of Claimant's testimony were not credible and provide reasons for each portion of Claimant's testimony deemed not to be credible. Claimant, however, provides no support for this assertion.

8

Accordingly, we reject Claimant's argument that the WCJ's determination concerning Claimant's credibility was not reasoned.[6]

Claimant also asserts that the WCJ did not provide adequate reasons for finding Dr. Stankiewicz not credible. The credibility determination relating to Dr. Stankiewicz provides:

> This WCJ has considered the testimony of Dr. Stankiewicz, together with all other evidence of record in this matter, and finds Dr. Stankiewicz's testimony not credible. In making the aforesaid credibility determination, the following is noted: (a) the doctor admits that when he saw and examined . . . Claimant on January 25, 2012, . . . Claimant did not tell him about the January 23, 2012 and January 24, 2012 alleged work incidents; (b) in formulating his opinion as to the cause of . . . Claimant's alleged disability, the doctor in relevant part relied on the faulty history given to him by . . . Claimant at the visit of February 6, 2012 concerning the alleged January 23, 2012 and January 24, 2012 work incidents/injuries. (This WCJ has determined that . . . Claimant failed to prove that such work incidents/injuries in fact occurred.)

(WCJ Decision at 6.) Claimant suggests that Dr. Stankiewicz's failure to obtain Claimant's history on January 25, 2012, is not a sufficient basis to reject Dr. Stankiewicz's testimony. Claimant also argues that Claimant's history was accurate, rather than "faulty." Claimant's contentions thus concern whether

---

[6] Within this argument, Claimant also appears to contend that substantial evidence does not support the finding that "Claimant was less than forthcoming concerning Dr. Stankiewicz's treatment of his back condition." (WCJ Decision at 6.) As noted above, however, the WCJ's observation of Claimant's demeanor alone is enough to support his finding that Claimant was not credible.

9

substantial evidence supports the WCJ's reasons for finding Dr. Stankiewicz not credible.[7]

Here, Dr. Stankiewicz's testimony supports the WCJ's finding that Claimant did not provide a full history on January 25, 2012. Dr. Stankiewicz testified as follows:

> Q.   January 25, 2012. You agree with me that he makes no reference to a work-related incident in that note.
>
> A.   Well, he complained of left hip, left leg and left knee pain at that point and he indicated it started to hurt the week prior to that in the note
>
> Q.   Right. He doesn't mention – this is January 25. He doesn't mention the day before, January 24, 201[2]. He doesn't mention the day before that January 23, 2012. . . . He doesn't mention either an event occurring on January 23, 2012 or an event occurring on January 24, 2012.
>
> A.   Correct.

(R.R. at 126.) Testimony also supports the WCJ's finding that Claimant subsequently provided Dr. Stankiewicz with a faulty history. Dr. Stankiewicz testified that Claimant ultimately informed him that on January 23, 2012, Claimant began to feel pain after he had been shoveling for four hours. (*Id.* at 69.) Mr. Moore, however, testified that Claimant would not have been shoveling for that long because Claimant only had to shovel "an inch or two" of snow from a fifty to seventy-five foot sidewalk. (*Id.* at 345.) The WCJ found that Mr. Moore's testimony was credible and that Claimant had not been shoveling snow for four

---

[7] "Substantial evidence is evidence which a reasonable mind would accept as adequate to support a conclusion." *Cinram Manufacturing, Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 583 (Pa. 2009).

hours as he told Dr. Stankiewicz. This supports the finding that Dr. Stankiewicz relied on a faulty history. We, therefore, find no error in the WCJ's credibility determination concerning Dr. Stankiewicz.

Claimant next argues that the WCJ did not provide adequate reasons for finding Dr. Sachs' testimony credible.[8] The credibility determination concerning Dr. Sachs provides:

> This WCJ has considered the testimony of Dr. Sachs, together with all other evidence of record in this matter, and finds Dr. Sachs' testimony credible in its entirety. Such testimony is corroborated by his clinical findings or lack thereof during his April 11, 2012 examination of . . . Claimant, the doctor's review of relevant medical records and report[s], and the doctor's expertise as a Board-certified orthopedic surgeon.

(WCJ Decision at 6.) Claimant argues that the only objective factor listed by the WCJ is Dr. Sachs' board certification, which is not a sufficient reason because of various inconsistencies in Dr. Sachs' testimony.

Evidentiary inconsistencies go to the weight to be accorded to the evidence. *Visteon Sys. v. Workers' Comp. Appeal Bd. (Steglik)*, 938 A.2d 547, 554 n.9 (Pa. Cmwlth. 2007). Even if inconsistencies did exist, it was the WCJ's prerogative to assign little weight to any inconsistencies in Dr. Sachs' testimony. The WCJ was only required to provide an objective basis for his credibility determination, which he did. As noted above, the WCJ based his credibility determination on Dr. Sachs' lack of clinical findings during his examination of

---

[8] Claimant also takes issue with the WCJ's summarization of Dr. Sachs' testimony, which incorrectly provides that Dr. Sachs was deposed on October 21, 2012, rather than October 11, 2012. This is harmless error, as the date of Dr. Sachs' deposition is irrelevant to the outcome of this matter.

11

Claimant, his review of the medical records, and his board certification. These reasons are sufficiently objective for the WCJ to find that Dr. Sachs' testimony was credible despite any inconsistencies. We, therefore, reject Claimant's argument concerning the WCJ's credibility determinations.[9]

## B. Capricious Disregard of Evidence

Claimant next argues that the WCJ capriciously disregarded evidence pertaining to Ms. Mandia and Dr. Sachs. As stated above, "capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer*, 812 A.2d at 487. Capricious disregard, however, is found only where a WCJ deliberately and baselessly disregards evidence that is apparently trustworthy. *Williams v. Workers' Comp. Appeal Bd. (USX Corp.– Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004). "[W]here there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon the capricious disregard of material, competent evidence." *Id.*

---

[9] Claimant also appears to argue that the WCJ did not provide adequate reasons for his determinations as to the credibility of Mr. Moore, Ms. Mandia, and Ms. Hoy. Claimant does not explain how the WCJ erred in rendering credibility determinations concerning these witnesses; rather, he seems to take issue with the WCJ's finding that no injury occurred. None of these witnesses, however, testified that Claimant was injured on January 23, 2012, or January 24, 2012. Mr. Moore and Ms. Hoy testified that he shoveled snow on January 23, 2012, and moved boxes on January 24, 2012. (R.R. 345, 349-50.) Ms. Mandia testified that Claimant reported a work injury to her on January 30, 2012, and, although she observed Claimant carrying boxes, she did not witness Claimant sustain an injury. (*Id.* at 354, 367.)

12

Claimant first asserts that the WCJ capriciously disregarded an admission made by Ms. Mandia, in Employer's response to Claimant's application for unemployment compensation benefits. Claimant argues that in the response, Ms. Mandia admitted that Claimant sustained a work-related injury. Claimant, however, mischaracterizes Ms. Mandia's statement. Ms. Mandia testified, in response to the unemployment compensation claim, she "wrote Ray injured his back at the end of January. We filed a workers' comp[ensation] claim on him." (R.R. at 358.) She did not admit that Claimant injured his back at work but, rather, that Claimant injured his back and a workers' compensation claim was filed. Accordingly, we reject Claimant's argument that the WCJ capriciously disregarded evidence pertaining to Ms. Mandia.

Claimant next argues that the WCJ capriciously disregarded portions of Dr. Sachs' testimony and medical report. First, Claimant suggests that the WCJ capriciously disregarded all of Dr. Sachs' testimony establishing bias, Dr. Sachs' admission that Claimant sustained an injury at work, Dr. Sachs' differing opinions on Claimant's ability to return to work, and Dr. Sachs' contradictory statements concerning the progression of Claimant's injury.

Claimant argues that the WCJ disregarded all of Dr. Sachs' cross-examination testimony. Specifically, Claimant takes issue with the WCJ's alleged failure to consider evidence establishing that Dr. Sachs was biased. Claimant contends that Dr. Sachs' income from IMEs, his former employment with an insurance company, and his brief, but expensive, examination of Claimant establish bias. Claimant, however, does not explain why he believes that the WCJ capriciously disregarded this evidence. A WCJ does not need to discuss every detail of the evidence in the record. *Dorsey v. Workers' Comp. Appeal Bd.*

13

*(Crossing Constr. Co.)*, 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007). Both experts were paid for their testimony concerning Claimant's injury. There is no indication that the WCJ, in rendering his credibility determinations, acted with bias. Accordingly, we reject Claimant's contention that the WCJ capriciously disregarded Dr. Sachs' cross-examination testimony.

We next address Claimant's argument that the WCJ capriciously disregarded Dr. Sachs' admission that Claimant sustained a work injury. Despite Claimant's contention, Dr. Sachs' testimony reveals that his statement regarding Claimant's work injury was based upon supposition:

> Q.    Supposing for a moment that he did suffer an injury that day or on those days, January 23, 2012 and/or January 24, 2012, how would you characterize the supposed injury?
>
> A.    There may have been a soft tissue type injury, but again, that is speculative, and largely based on the history.

(R.R. at 162.) Further, Dr. Sachs definitively stated that Claimant's records "do not support a specific injury." (*Id.*) Accordingly, we reject Claimant's argument that the WCJ capriciously disregarded Dr. Sachs' admission that Claimant sustained a work injury.

We next address Claimant's argument that the WCJ capriciously disregarded Dr. Sachs' differing opinions on Claimant's ability to return to work.[10]

---

[10] Claimant also appears to argue that Dr. Sachs' testimony in this regard is equivocal. "Medical testimony will be found unequivocal if the medical expert, after providing a foundation, testifies that in his professional opinion that he believes a certain fact or condition exists." *Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ.)*, 942 A.2d 939, 954 (Pa. Cmwlth.), *appeal denied*, 960 A.2d 457 (Pa. 2008). "The equivocality of medical testimony is to be judged upon review of the entire testimony." *Carpenter Tech. Corp. v. Workers' Comp. Appeal Bd. (Wisniewski)*, 600 A.2d 694, 696 (Pa. Cmwlth. 1991). "Taking a medical expert's **(Footnote continued on next page…)**

Claimant asserts that, during Dr. Sachs' deposition, Dr. Sachs opined that Claimant was capable of performing the activities he was capable of performing prior to January 23, 2012. In his medical report, however, Dr. Sachs opines that Claimant could not return to work. A review of the testimony as a whole demonstrates that, rather than changing his opinion, Dr. Sachs simply clarified the opinion in his medical report during his deposition:

> Q. In your report you indicate that you did not feel that [C]laimant would be capable of returning to work in the type of job he was performing for . . . [Employer] in 2011 and 2012. Explain to the [WCJ] what you meant by that.
>
> A. In my practice, and my own patients who would present this way, I would not advise them to return to that type of employment; however, he was working at that type of employment with his back, with his radiculopathy, with his chronic postoperative changes, so just without him being my patient and looking at the fact that he was doing that, there is no reason why he shouldn't be able to do that.

(*Id.* at 178-79.) Accordingly, we reject Claimant's argument that the WCJ capriciously disregarded Dr. Sachs' inconsistent opinions concerning Claimant's ability to return to work.

---

**(continued…)**

testimony as a whole, it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt." *Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg College)*, 794 A.2d 443, 449 (Pa. Cmwlth. 2002). As noted above, Dr. Sachs simply clarified the opinion in his medical report. This does not render his testimony equivocal.

Lastly, we address Claimant's argument that the WCJ capriciously disregarded Dr. Sachs' contradictory statements concerning the progression of Claimant's injury. Dr. Sachs testified:

> Q. Do you see any progression from January 2009 to April 2012?
>
> A. No.
>
> . . .
>
> A. We know that it didn't resolve. We know that he has had MRI scans in 2008, and MRI scans in 2009, that show progression, and that progression continues unchanged, albeit in the latest MRI scans.

(*Id.* at 174, 178-79.) Claimant mischaracterizes Dr. Sachs' testimony. Dr. Sachs noted that there was progression from 2008 to 2009. The results of that progression were still visible on an MRI in 2012, although there had been no further progression since 2009. Accordingly, we reject Claimant's argument that the WCJ capriciously disregarded Dr. Sachs' testimony concerning the progression of Claimant's injury.

## C. "Patchwork of Findings"

Claimant next argues that the WCJ's opinion is without rational basis and, therefore, must be reversed. Claimant cites *Giant Eagle, Inc. v. Workmen's Compensation Appeal Board (Bensy)*, 651 A.2d 212 (Pa. Cmwlth. 1994), for the proposition that a WCJ's decision is erroneous where a "patchwork of findings together" results in credibility determinations that are illogical. (Cl.'s Br. at 11.) In *Giant Eagle*, this Court recognized that "[w]here the [WCJ's] opinion is without a rational basis or scheme so as to be capricious, we are bound to reverse." *Giant Eagle*, 651 A.2d at 218. Noting that an opinion would rarely meet those criteria, this Court explained the particular circumstances under which the case arose:

16

> The [WCJ] failed to set forth any findings of fact with respect to the medical witnesses who testified. Instead, he inexplicably states that he finds the direct testimony of all of these witnesses as being not believable and not credible and picks and chooses as to the credibility of parts of testimony of other witnesses with no rhyme or reason. The [WCJ] found that he does believe the cross-examination testimony of Dr. Durning and Dr. Merkow, despite the fact that there are very few relevant facts contained in these portions of the testimony. In essence, we can make no sense of the patchwork of credibility findings as to portions of each individual's testimony.

*Id.*

The instant matter is distinguishable from *Giant Eagle*. As noted above, the WCJ provided sufficient reasons for his credibility determinations and those reasons were supported by the testimony of the witnesses. The WCJ made findings for each witness that testified. He did not pick and choose specific portions of a witness's testimony to find credible; rather, he accepted or rejected the credibility of a witness's testimony as a whole. The WCJ considered the conflicting evidence and properly found that Employer's witnesses were more credible than Claimant's. This is a proper function of the WCJ's role as factfinder. *See Cittrich v. Workmen's Comp. Appeal Bd. (Laurel Living Ctr.)*, 688 A.2d 1258, 1259 (Pa. Cmwlth. 1997) (explaining that determinations concerning weight given to conflicting evidence are solely for WCJ). Accordingly, we reject Claimant's argument that the WCJ's opinion is without a rational basis.

### D. Weight of the Evidence

Lastly, Claimant contends that the overwhelming weight of the evidence supports reversal. Reweighing the evidence presented before the WCJ is not an appropriate role of an appellate court. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992) ("[T]he appellate role

17

is not to reweigh the evidence or to review the credibility of the witnesses."). Although Claimant contends that the evidence supports reversal of this matter, the WCJ weighed the evidence in favor of Employer more heavily than that which favored Claimant. This is a proper exercise of the WCJ's role as factfinder, and it is not for this Court to assume the WCJ's role in this matter. We, therefore, reject Claimant's argument that the overwhelming weight of the evidence supports reversal.

### III. CONCLUSION

For the reasons set forth above, we affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Raymond Argro,                                  :
                Petitioner      :
                                  :
          v.                                   :   No. 1954 C.D. 2014
                                  :
Workers' Compensation Appeal        :
Board (Ardmore Automotive, Inc.),     :
               Respondent      :

## O R D E R

AND NOW, this 12th day of August, 2015, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

 

 

                              _____
                              P. KEVIN BROBSON, Judge