# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sarah Schock, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1352 C.D. 2016 |
| | : | |
| Workers' Compensation | : | |
| Appeal Board (Brown's Super Stores), | : | |
| Respondent | : | |
| | : | |
| | : | |
| | : | |
| Brown's Super Stores, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1366 C.D. 2016 |
| | : | Submitted: April 21, 2017 |
| Workers' Compensation | : | |
| Appeal Board (Schock), | : | |
| Respondent | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                        FILED: August 21, 2017

Sarah Schock (Claimant) petitions for review of two adjudications of the Workers' Compensation Appeal Board (Board) dated June 16, 2015, and July 28, 2016, respectively. Claimant's employer, Brown's Super Stores (Employer), cross-petitions for review of the Board's July 28, 2016, adjudication. The June 16, 2015, adjudication, in pertinent part, affirmed the Workers' Compensation Judge's (WCJ) grant of Employer's petition to terminate benefits. The July 28, 2016, adjudication affirmed, in part, the WCJ's decision to grant Claimant

reimbursement of litigation costs. These matters have been consolidated for our disposition. For the reasons that follow, we affirm in part and vacate and remand in part.

## Background

Claimant worked for Employer as a deli clerk. On April 30, 2012, she fell on a slippery floor while cleaning a slicer and injured her lower back. On August 7, 2012, Employer issued a medical-only Notice of Compensation Payable (NCP) describing the injury as a lumbar strain. Reproduced Record at 1 (R.R. __). Claimant subsequently filed a claim petition under the Workers' Compensation Act (Act)[1] seeking partial disability benefits from April 30, 2012, to July 16, 2012, and total disability benefits thereafter. She also filed a penalty petition alleging that Employer failed to recognize compensable injuries in its NCP and failed to pay compensation when due. Employer denied these allegations.

On June 12, 2013, Employer filed a petition to terminate compensation benefits effective June 6, 2013, the date on which an independent medical examination (IME) reported that Claimant had fully recovered from her lumbar strain. Claimant filed an answer denying the allegations.

All three petitions were assigned to the WCJ for disposition. Claimant testified in person and by deposition. Claimant stated that she started working for Employer in August 2011 and had no problems with her back before that date.[2] Her job duties as a deli clerk included slicing deli meat and cheeses and

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

[2] Claimant acknowledged sustaining a back injury in 1999, from which she fully recovered.

preparing deli products. She lifted up to 50 pounds and stood six to eight hours a day. Notes of Testimony (N.T.), 12/10/2012, at 8; R.R. 28. She earned $8.00 per hour, or $300 per week before taxes.

Claimant testified that the April 30, 2012, work incident caused pain in her lower back that "[s]hoots down into [her] left leg, into [her] left foot and then [she] also ha[s] pain down the right, in the back until about [her] ankle." N.T., 12/10/2012, at 10; R.R. 30. Claimant did light-duty work for Employer from April 30, 2012, until July 16, 2012. Thereafter, she worked as a greeter for four hours a day, from August 20, 2012, through August 27, 2012; from October 10, 2012, until October 18, 2012; and from November 27, 2012, until December 3, 2012. As a greeter, Claimant sat at the front door and handed out circulars. Claimant has not returned to work since December 3, 2012, because the pain in her back and leg "became unbearable." N.T., 12/10/2012, at 11; R.R. 31.

Claimant testified that she was first treated at Concentra and then transferred to Rothman Institute, which administered an epidural injection that only worsened her pain. Rothman Institute referred Claimant to Dr. Kenneth Izzo, who did a functional capacity evaluation, followed by an electromyogram (EMG) on November 26, 2012. In the meantime, on November 16, 2012, Employer issued a Notice of Ability to Return to Work to Claimant, based on an IME done by Dr. Evan Kovalsky. On June 11, 2013, Claimant underwent a back surgery performed by Dr. Andrew Freese; until then, she testified, her pain has "progressively gotten worse." N.T., 10/22/2013, at 5; R.R. 286.

In support of her claim petition, Claimant submitted the deposition testimony of Dr. Izzo, who is board certified, *inter alia,* in medicine and

3

rehabilitation. Dr. Izzo testified that his October 2012 functional capacity evaluation of Claimant showed that she could work in a sedentary job. Dr. Izzo testified that he reviewed two magnetic resonance imaging (MRI) studies dated May 30, 2012, and August 6, 2012. Both MRIs indicated desiccation, bulging and annular tearing of Claimant's discs at L4-5 and L5-S1. Dr. Izzo testified that he examined Claimant again on October 23, 2012, at which time he noted that she had been working four hours a day since October 12, 2012, and that each day she experienced increasing pain in her back and legs. He put Claimant on disability through December 3, 2012.

Dr. Izzo testified that Claimant's EMG revealed bilateral lumbar radiculopathy, which he opined was caused by the work injury. Dr. Izzo explained that lumbar radiculopathy "was subacute for the most part," which "usually is between a three month and six to eight month period." N.T., 1/14/2013, at 19-20; R.R. 98-99. Dr. Izzo diagnosed Claimant as follows:

> One, chronic, severe, incapacitating low back pain secondary to lumbar spine discogenic injuries at L4-L5 and L5-S1 with evidence of *disc desiccation, disc bulges and suspected small annular tears, fissures or tears at these two levels*. Two was mild foraminal stenosis bilaterally at L4-L5 attributed to mild hypertrophy of the facet joints. Three was aggravation of pre-existing and essentially asymptomatic lumbar foraminal stenosis at L4-5 with mild hypertrophy of the facet joints. Four was ongoing bilateral lumbar radiculopathy possibly greater on the right side.

N.T., 1/14/2013, at 14; R.R. 93 (emphasis added). Dr. Izzo opined that Claimant was totally disabled from working with the exception of the four periods when she had returned to light-duty work. N.T., 1/14/2013, at 24; R.R. 103.

4

On cross-examination, Dr. Izzo agreed that in May 2012, Concentra diagnosed Claimant with a contusion of the lumbar spine with negative neurologic deficit. Dr. Izzo also acknowledged that he did not review records from Concentra, and he agreed that the two 2012 MRIs did not show evidence of disc herniation. Dr. Izzo further agreed that an August 13, 2012, examination by Dr. Jeremy Simon at Rothman Institute revealed no antalgic gait and no lumbar spine tenderness, which would be expected in a disc abnormality.

Claimant also presented the deposition testimony of Dr. Andrew Freese, a board-certified neurosurgeon, who examined Claimant on April 5, 2013. Claimant's medical history showed a back problem in 2000 from which she had been "pain-free for well over a decade" until April 30, 2012, the date of her work injury. N.T., 6/28/2013, at 7; R.R. 202. Claimant told Dr. Freese that her symptoms had progressed since the work injury. She complained of "severe axial discogenic pain which extended more into the left leg than the right and in a posterior lateral distribution all the way into her foot associated with numbness and tingling." N.T., 6/28/2013, at 8; R.R. 203. She indicated that "the axial or midline back pain constituted 80 percent of her pain syndrome, whereas her leg symptoms accounted for about 20 percent." *Id*.

Dr. Freese's April 5, 2013, examination revealed reduced range of motion with extension, tenderness to deep palpation, and some mild weakness in Claimant's ankle, all of which, Dr. Freese opined, is consistent with an L-5 nerve dysfunction. He found decreased sensation in the left leg, which he believed consistent with an L-5 or an S-1 nerve root problem. Finally, Dr. Freese found "a straight leg raising sign on the left 20 degrees, indicating a nerve root tension sign

5

or a nerve compression or irritation." N.T., 6/28/2013, at 10; R.R. 205. Dr. Freese observed that Claimant had an antalgic gait, which is consistent with a disc abnormality. Dr. Freese also reviewed the MRIs done on May 30, 2012, August 6, 2012, and April 4, 2013, as well as the EMG study and x-rays.

Based on his April 5, 2013, examination, Dr. Freese diagnosed Claimant as having "lumbar disc herniations with annular tears and discogenic pain and radiculopathy." N.T., 6/28/2013, at 11; R.R. 206. Dr. Freese testified that in his June 11, 2013, surgery on Claimant, he observed that her nerve roots at L4, L5, and S1 "were clearly red and irritated consistent with a nerve irritation, and there was evidence of disc herniations." N.T., 6/28/2013, at 15; R.R. 210. Dr. Freese opined that the annular tears on Claimant's first imaging studies "progressed almost like a ripped stocking expands into a full blown tear[ ] with protrusions at both L4-5 and L5-S1." N.T., 6/28/2013, at 17; R.R. 212. Dr. Freese opined that Claimant's disc herniations that required his surgery were related to her work injury.

On cross-examination, Dr. Freese acknowledged that Claimant's May 2, 2012, examination at Concentra and her August 13, 2012, examination by Dr. Simon showed no evidence of neurologic deficit. Nonetheless, Dr. Freese explained:

> [Question]: Would you agree that [the May 2, 2012, examination results] would be inconsistent with the findings that you documented when you saw her?
>
> [Dr. Freese]: I saw her almost a year later.
>
> [Question]: I understand that. Would you agree that the findings of the doctor who saw her three days after the work

6

incident that I've asked you to assume would be considered inconsistent with the findings that you documented a year later?

[Dr. Freese]: I guess I need to address the word inconsistent. I think that because I saw her several months or almost a year later, they are not inconsistent. It's consistent to have somebody develop progressive problems after this kind of an issue….

N.T., 6/28/2013, at 52; R.R. 247. Dr. Freese acknowledged that his examination did not find abnormal reflexes, atrophy in the lower extremities, or muscle spasm in the lower back.

Finally, Claimant submitted the deposition testimony of Patrick Furey, the adjuster assigned to her case. Furey testified that he was aware that Claimant had returned to work on four occasions; that he had received disability notes and medical reports from Claimant's healthcare providers; and that he received three disability notes from Rothman Institute, dated August 28, 2012, October 8, 2012, and November 6, 2012, respectively. Furey also received a note from Dr. Izzo, dated December 4, 2012, which stated that Claimant was totally disabled from her modified job. Furey acknowledged that Employer did not pay indemnity benefits to Claimant.

In opposition to Claimant's claim petition and in support of its termination petition, Employer presented the deposition testimony of Dr. Kovalsky, a board-certified orthopedic surgeon, who performed the October 12, 2012, IME. Dr. Kovalsky opined that Dr. Izzo's functional capacity evaluation was not "bona fide" due to its lack of "checks and balances." N.T., 3/22/2013, at 8; R.R. 359. He explained that pulse and heart rate should be constantly checked throughout the evaluation to see whether they correlate to the patient's complaints

7

of pain. "[W]ithout those correlations objectively," the evaluation is "meaningless." N.T., 3/22/2013, at 9; R.R. 360.

Dr. Kovalsky testified that Claimant embellished her symptoms during the IME. She complained of pain after "light superficial touching in her back." N.T., 3/22/2013, at 14; R.R. 365. The IME revealed a normal gait, no muscle spasm, intact neurological testing, no motor strength deficit, and a normal straight leg raising test. Dr. Kovalsky diagnosed Claimant as sustaining a lumbosacral sprain as a result of the work injury. He opined that Claimant was not fully recovered as of the date of his examination and was capable of doing the work of a greeter.

Employer also submitted the deposition testimony of Dr. Donald McCarren, who is board certified in neurology and electromyography. He reviewed the EMG study done by Dr. Izzo and opined that it was "incomplete." N.T., 7/23/2013, at 8; R.R. 453. Dr. McCarren opined that Dr. Izzo's study did not contain sufficient data to support a diagnosis of lumbar radiculopathy or warrant a recommendation of surgery. On cross-examination, Dr. McCarren acknowledged that he never met or examined Claimant.

Finally, Employer submitted the deposition testimony of Dr. Neil Kahanovitz, a board-certified orthopedic surgeon, who did an IME on Claimant on June 6, 2013, five days before Dr. Freese did the back surgery. The IME revealed no neurological deficits, no evidence of atrophy or muscle spasm, and a negative series of sciatic stretch tests. The examination was not consistent with nerve root compression due to disc herniation. Dr. Kahanovitz opined that Claimant's complaint of pain was "markedly exaggerated." N.T., 10/17/2013, at 13; R.R. 476.

8

He reviewed the MRIs dated May and August of 2012 and observed degenerative changes at L4-5 and L5-S1 but no disc herniation.

Dr. Kahanovitz opined that the desiccation and annular tears in Claimant's discs were consistent with long-standing degenerative disease and unrelated to the work injury. Dr. Kahanovitz further opined that the disc herniation in the April 2013 MRI report was not related to the work injury because the two 2012 MRIs revealed no disc herniation or a progressive condition. With respect to Dr. Freese's testimony that Claimant's annular tears progressed into a disc herniation like a ripped stocking, Dr. Kahanovitz responded as follows:

> It's just not accurate.... *There is absolutely no scientific evidence ... that degenerative changes such as disc desiccation, annular tearing, evolve into disc herniations.* It is well known, well documented in the scientific literature, that disc herniations are an acute traumatic event, which cause tearing of annular fibers and herniation or separation of that portion of the disc is traumatically herniated.

N.T., 10/17/2013, at 20-21; R.R. 483-84 (emphasis added). Dr. Kahanovitz stated that Claimant sustained a lumbar strain as a result of the work injury and had fully recovered as of the date of his examination. Dr. Kahanovitz concluded that Claimant needed no further treatment and that the surgery performed by Dr. Freese could not be attributed to the work injury.

## WCJ Decision

The WCJ granted Claimant's claim petition, in part. She awarded Claimant temporary total disability benefits for the periods of July 16 through August 19, 2012; August 28 through October 9, 2012; October 19 through November 26, 2012; and December 4, 2012 through June 6, 2013. The WCJ also

9

granted Claimant partial disability benefits for any weeks between April 30, 2012, and December 4, 2012, when she was doing light duty work but not at her pre-injury wages. The WCJ denied Claimant's claim for disability benefits after June 6, 2013, finding that she did not meet her burden of proving her disability continued after that date. The WCJ also denied Claimant's penalty petition, concluding that Claimant did not meet her burden of proof.

Concomitantly, the WCJ granted Employer's termination petition effective June 6, 2013. The WCJ found:

> 15. This Judge had the opportunity to observe Claimant during her testimony and finds her credible based on her demeanor. Her testimony is credible that on April 30, 2012 she slipped and fell and injured her lower back. Her testimony is credible that she attempted to return to light-duty work on four occasions and last worked on December 3, 2012, at which point she did not continue to work because of her symptoms. Her testimony is credible that she had a prior back injury for which she received treatment, but she was not treating for back pain at the time of the work injury.

> 16. The testimony of Dr. Izzo is credible in part. His testimony is credible that as of the time he first examined Claimant and performed the FCE [(functional capacity evaluation)], Claimant was capable of performing low sedentary work. His testimony is credible that Claimant was disabled from employment in December 2012 due to her pain getting progressively worse when she tried to return to work.

> 17. The testimony of Dr. Freese is credible in part. His testimony is credible that Claimant had complaints of back and leg pain when he saw her in April of 2013. His testimony is not credible that the surgery he performed in June 2013 is related to the work injury. In making this determination, this Judge finds it significant that the first two MRIs revealed degenerative changes but did not reveal disc herniations. *His testimony is not credible that Claimant's disc abnormalities progressed*

*"almost like a ripped stocking expands"* to the point that she required surgery.

18. The testimony of Dr. Kovalsky is credible that Claimant sustained a lumbosacral strain and sprain and contusions as a result of the work injury. His testimony is credible that there was no neurologic deficit that could be attributable to Claimant's low back condition. His testimony is credible that Claimant was not fully recovered as of the date of his exam.

19. The testimony of Dr. Kahanovitz is credible that Claimant sustained a lumbar strain as a result of the work injury. *His testimony is credible that the first two MRIs revealed degenerative changes with no evidence of a disc herniation and the hypothesis put forth by Dr. Freese is not scientifically valid that the degenerative changes progressed into a herniation.* Given that this Judge finds his testimony credible that the June 2013 surgery is not related to the work injury, his testimony is also credible that Claimant was fully recovered from the work injury as of the date of his examination.

20. The testimony of Dr. McCarren is credible that, based upon his review of the EMG/NCS data, there is insufficient data to support a diagnosis of lumbar radiculopathy. Although he did not actually perform the EMG, he credibly explained how it should be performed and why the EMG performed by Dr. Izzo was not reliable.

WCJ Decision, 6/26/2014, at 9-10; Findings of Fact Nos.15-20 (emphasis added). Based on these findings, the WCJ concluded that Claimant was fully recovered by June 6, 2013, and not entitled to disability benefits after that date.

The WCJ ordered Employer to reimburse Claimant for her litigation costs "[b]ecause Claimant was partially successful in the litigation." WCJ Decision, 6/26/2014, at 11. The relevant costs included fees incurred for the depositions of Dr. Freese, Dr. McCarren, Dr. Kahanovitz, and Furey, which the WCJ found reasonable. *Id*. at 6; Finding of Fact No. 9.

11

Both Claimant and Employer appealed to the Board. Claimant argued that the WCJ erred in granting Employer's termination petition because the record did not support the WCJ's credibility determinations and, further, Employer did not prove that Claimant was fully recovered as of June 6, 2013. Employer challenged the WCJ's decision awarding Claimant reimbursement for her litigation costs and requested a supersedeas of the WCJ's order with respect to the expenses Claimant incurred for the depositions of Dr. Freese, Dr. McCarren, Dr. Kahanovitz, and Furey. The Board granted the supersedeas on August 8, 2014.

### Board's June 16, 2015, Adjudication

By order dated June 16, 2015, the Board affirmed the WCJ's decision granting Employer's termination petition, holding that the WCJ did not err in finding that Claimant had fully recovered as of June 6, 2013. In pertinent part, the Board stated:

> In rendering her determination to grant the Termination Petition, the [WCJ] relied on the testimony of Dr. Kahanovitz, which was unequivocal and competent as to Claimant's full recovery from her lumbar strain injury.
>
> [N]otably, the [WCJ] specifically indicated that *she accepted Dr. Kahanovitz's opinion that the herniated disc and subsequent surgery were not related to the work injury because the two MRIs from May and August of 2012 did not show a herniation while the subsequent MRI from April 2013 showed a herniation.* Since we see no inconsistency in the [WCJ's] credibility determinations or subsequent determination, we won't disturb the Decision.

12

Board Adjudication, 6/16/2015, at 9 (emphasis added). The Board further concluded that the WCJ did not err by placing the burden on Claimant to prove that her surgery was related to her work injury.

The Board agreed with Employer that the WCJ erred in awarding Claimant reimbursement for all her litigation costs because the WCJ granted the claim petition only in part. Accordingly, the Board remanded the matter to the WCJ to award Claimant reimbursement for those costs relating to the issues on which Claimant prevailed.[3]

**WCJ Remand Decision**

On remand, the WCJ reaffirmed her decision awarding Claimant the expenses she incurred in deposing Dr. Freese, Dr. McCarren, Dr. Kahanovitz, and Furey. The WCJ found these expenses were "reasonable and reimbursable" because "they are related to the parts of the Claim Petition on which Claimant prevailed." WCJ Decision, 10/21/2015, at 5; Conclusion of Law No. 2. Specifically, the WCJ found that "[Dr. Freese's] testimony supported Claimant's claim that she was entitled to wage loss benefits at least through June 6, 2013." WCJ Decision, 10/21/2015, at 4; Finding of Fact No. 7. The WCJ further found Furey's testimony "corroborated Claimant's testimony regarding the periods of

---

[3] On July 6, 2015, Claimant filed a petition for review with this Court with respect to the part of the Board's order affirming the WCJ's grant of Employer's termination petition. On July 8, 2015, this Court quashed Claimant's petition for review, holding that the Board's remand to the WCJ involved an exercise of discretion pursuant to PA. R.A.P. 311(f); accordingly, the order Claimant appealed was interlocutory and not immediately appealable. *Schock v. Workers' Compensation Appeal Board (Brown's Super Stores)*, (Pa. Cmwlth., No. 1143 C.D. 2015, filed July 8, 2015).

13

disability for which Claimant was seeking benefits in connection with the Claim Petition." WCJ Decision, 10/21/2015, at 4; Finding of Fact No. 6.

As to Dr. McCarren's deposition, the WCJ found it "did not negate the fact that [Claimant] injured her low back on April 30, 2012[,] nor did it negate the fact that she was entitled to workers' compensation benefits for various periods of time in 2012 and 2013." WCJ Decision, 10/21/2015, at 4; Finding of Fact No. 8. The WCJ further found "[Dr. Kahanovitz's] testimony … confirmed that Claimant sustained a work-related injury in April of 2012 in the nature of a lumbar strain, thereby supporting Claimant's Claim Petition in part." WCJ Decision, 10/21/2015, at 5; Finding of Fact No. 9. Employer appealed.

### Board's July 28, 2016, Adjudication

By order dated July 28, 2016, the Board affirmed the WCJ's decision insofar as it awarded Claimant the costs of deposing Dr. Freese and Furey, finding that these two depositions supported the WCJ's partial grant of the claim petition. The Board reversed the WCJ's decision insofar as it awarded Claimant the costs of deposing Dr. McCarren and Dr. Kahanovitz. Dr. McCarren's deposition did not relate to a matter on which Claimant prevailed, but merely "did not contradict a finding of injury or disability." Board Adjudication, 7/28/2016, at 9. Dr. Kahanovitz's testimony confirmed that Claimant sustained a lumbar strain, but this was not a contested matter. Employer acknowledged the work injury as a lumbar strain in its medical-only NCP and in its answer to the claim petition.

The Board affirmed and made final its June 16, 2015, order. Claimant now petitions this Court for review of the Board's June 16, 2015, and July 28,

2016, orders, and Employer cross-petitions for review of the Board's July 28, 2016, order.[4]

Claimant presents two issues for our consideration.[5] First, she argues that the WCJ, in granting Employer's termination petition, failed to make "reasoned credibility determinations." Claimant Brief at 9. Alternatively, Claimant argues that the WCJ misapplied the burden of proof in terminating her disability benefits. Second, Claimant argues that the Board erred in reversing the WCJ's decision on remand that she was entitled to reimbursement for the cost of deposing Dr. McCarren and Dr. Kahanovitz. Employer argues, in its cross-petition, that the Board erred in affirming the WCJ's award of Claimant's expenses of deposing Dr. Freese and Furey.

**Analysis**

We first address Claimant's appeal. In her first issue, Claimant argues that the WCJ did not satisfy the "reasoned decision" requirement of Section 422 of the Act, 77 P.S. §834. Relying on our Supreme Court's decision in *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043 (Pa. 2003) (*Daniels*), Claimant maintains that the WCJ did not explain her reasons for rejecting portions of Dr. Izzo's and Dr. Freese's deposition testimony. Further,

---

[4] This Court's review of an order of the Board is to determine whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

[5] We have combined and reordered Claimant's issues for purposes of our analysis.

Claimant argues that the WCJ erred in placing the burden on Claimant to prove that her disc herniation was related to the work injury.

The WCJ, as fact finder, "has exclusive province over questions of credibility and evidentiary weight, and the [WCJ]'s findings will not be disturbed when they are supported by substantial, competent evidence." *Greenwich Collieries v. Workers' Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). The WCJ "is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Id.* Moreover, where both parties present evidence, it is irrelevant that the record contains evidence which supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists that supports the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

The WCJ's exercise of discretion, however, is not without limitation. Section 422 of the Act requires the WCJ to issue a "reasoned decision" that "adequately explain[s]" a credibility determination. 77 P.S. §834.[6] Our Supreme

---

[6] Section 422 of the Act provides in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must

**(Footnote continued on the next page . . . )**

16

Court has held that a decision is "reasoned" for purposes of Section 422 of the Act "if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels*, 828 A.2d at 1052. Regarding live testimony presented at a hearing, a WCJ's decision need not "explain inherently subjective credibility decisions according to some formulaic rubric or [be] detailed to the 'nth degree.'" *Id*. at 1053. However, the rule is different for the deposition testimony of medical experts, where a credibility determination cannot be based on personal observations. In that case, the WCJ's "resolution of the conflicting evidence cannot be supported by a mere announcement that [the WCJ] deemed one expert more 'credible and persuasive' than another." *Id*. Rather, a WCJ must articulate an objective basis for the credibility determination by identifying and evaluating the factors relevant to credibility. *Id*. These factors include, but are not limited to, the following:

> [A]n expert witness's opinion may be based upon erroneous factual assumptions ...; or an expert may have had less interaction with the subject ...; or the interaction was in a less timely fashion ...; or the expert may betray a bias or interest in the matter.... In addition, an expert witness may be unqualified or less qualified than the opposing party's expert; or may be impeached with inconsistencies or contradictions in his or her testimony or reports; or may be impeached in some other convincing fashion.

---

**(continued . . . )**
identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

17

*Id.* (citations omitted).

Here, both parties' medical experts testified by deposition. The WCJ precisely identified the parts of the expert depositions that she credited and the parts she did not credit. The question is whether the WCJ identified an objective basis for her credibility determinations.

The WCJ credited Dr. Kahanovitz's opinion that Claimant's herniated disc and surgery were not related to her work injury and that Claimant had recovered from her lumbar sprain as of June 6, 2013, the date of his IME. The WCJ's stated reason for this credibility determination was that Claimant's MRI reports from May and August of 2012 supported Dr. Kahanovitz's opinion. For the same reason, the WCJ rejected Dr. Freese's contrary opinion that Claimant's disc surgery was related to her work injury. WCJ Decision, 06/26/2014 at 7; Finding of Fact No.17.

Dr. Freese acknowledged the fact that Claimant's initial examinations and MRIs in 2012 did not show a neurologic deficit. However, he opined that the degenerative changes shown in Claimant's first imaging studies progressed into a disc herniation, as shown in the April 4, 2013, MRI report and in the surgery he did on June 11, 2013. Dr. Freese explained that his conclusion was consistent with Claimant's initial test results because "[he] saw her almost a year later[,]" and "[i]t's consistent to have somebody develop progressive problems after this kind of an issue." N.T., 6/28/2013, at 52; R.R. 247. Dr. Freese stated that her annular tears progressed into herniation, like a tear in a stocking. In rejecting this opinion, the WCJ credited Dr. Kahanovitz's testimony that "[t]here is absolutely no scientific evidence ... that degenerative changes such as disc desiccation, annular

tearing, evolve into disc herniations." N.T., 10/17/2013, at 20; R.R. 483. The Board held that the WCJ sufficiently explained her credibility determinations.

It may be that the WCJ rejected Dr. Freese's explanation because he did not opine that a muscle strain can trigger a rapid progression of disc abnormalities into a herniation and because Claimant did not offer evidence to rebut Dr. Kahanovitz's criticism that Dr. Freese's theory had no support in science. However, it is inappropriate for an appellate court to "imagine reasons" for the WCJ's preference, even if they could be drawn from the record. *Daniels*, 828 A.2d. at 1054; *see also Kastenbaum v. Workers' Compensation Appeal Board (Teleflex Marine)*, (Pa. Cmwlth., No. 767 C.D. 2012, filed February 12, 2013), slip op. at 18.[7] It is for the WCJ to explain the reason for preferring the opinion of Dr. Kahanovitz over that of Dr. Freese, given the fact that Dr. Freese acknowledged that Claimant showed no disc herniation after her 2012 fall at work.

The WCJ explicitly credited Dr. Kovalsky's testimony that Claimant sustained a lumbosacral strain as a result of the work injury and that he observed no neurologic deficit as of October 12, 2012, the date he performed an IME. Implicitly, the WCJ rejected Dr. Izzo's diagnosis that the work injury caused a lumbar radiculopathy. However, the WCJ credited Dr. Izzo's conclusion that Claimant was disabled from employment in December 2012 because her pain had progressively worsened. WCJ Decision, 06/26/2014, at 9; Finding of Fact No.16.

---

[7] Pursuant to Commonwealth Court Internal Operating Procedures §414(a), 210 Pa. Code §69.414(a), an unreported opinion of this Court may be cited for its persuasive value and not as binding precedent.

The WCJ did not explain why she credited, or "preferred," Dr. Kovalsky's diagnosis of lumbar strain over Dr. Izzo's diagnosis of lumbar radiculopathy. Again, it can be inferred that the WCJ rejected Dr. Izzo's opinion because he did not review the Concentra records, which showed no neurologic defect shortly after her fall. But it is the WCJ who must do the explanation.

It is not enough for the WCJ to identify her credibility determinations, which she did rather meticulously. The WCJ must also identify the objective basis for the preference of one expert over the other. The WCJ identified the 2012 MRIs as the objective basis for preferring Dr. Kahanovitz over Dr. Freese. This is not enough to explain all aspects of this credibility determination because Dr. Freese acknowledged that the disc herniation did not appear in the 2012 MRIs. Further, the WCJ did not explain the decision to credit Dr. Kovalsky's opinion that Claimant sustained a lumbar strain over Dr. Izzo's diagnosis of lumbar radiculopathy. We are constrained, therefore, to remand, so that the WCJ may explain the objective basis for her credibility decisions. At the same time, this explanation does not require detail to the "nth degree." *Daniels*, 828 A.2d at 1053.

Claimant also argues that the WCJ misapplied the burden of proof in terminating her disability benefits as of June 6, 2013. She maintains that it is Employer's burden to prove that the disc herniation, as shown in the April 4, 2013, MRI report, arose after the work injury and from an independent cause. Claimant Brief at 16. We disagree.

In a claim petition proceeding, the claimant bears the burden of proving that she suffered a work-related injury in the course and scope of her employment that resulted in a loss of earning power. *Inglis House v. Workmen's*

20

*Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). The claimant must also establish the duration of disability. *Wagner v. Workers' Compensation Appeal Board (O'Malley Wood Products, Inc.)*, 805 A.2d 683, 684 (Pa. Cmwlth. 2002). "An employer seeking to terminate a claimant's benefits must prove that a claimant's disability has ceased, or that any existing injury is not the result of the work-related injury." *O'Neill v. Workers Compensation Appeal Board (News Corporation, Ltd.)*, 29 A.3d 50, 53 (Pa. Cmwlth. 2011).

Employer's medical-only NCP described Claimant's work injury as a lumbar strain, from which Employer asserted she had fully recovered as of June 6, 2013. Claimant sought disability benefits from April 30, 2012, to July 16, 2012, and total disability benefits thereafter, alleging that her compensable injuries included a disc herniation, for which she underwent surgery on June 11, 2013. To prevail on her claim petition, Claimant had the burden of establishing the extent and duration of her injury and that any medical treatment she received was related to the work injury. The WCJ did not err in placing that burden on Claimant.

In summary, because the WCJ did not adequately explain her credibility determinations, we vacate the Board's June 16, 2015, order insofar as it affirmed the WCJ's grant of the termination petition and remand the matter to the Board with an instruction to remand to the WCJ to issue a decision in compliance with the "reasoned decision" requirement of Section 422 of the Act.[8]

---

[8] Claimant, relying on *Giant Eagle, Inc. v. Workmen's Compensation Appeal Board (Bensy)*, 651 A.2d 212 (Pa. Cmwlth. 1994), urges this Court to remand the matter to a different WCJ "for an unbiased review of the evidence presented." Claimant Brief at 11. *Giant Eagle* was decided based on Section 425 of the Act, which provides, in relevant part:
**(Footnote continued on the next page . . . )**

Claimant argues, next, that the Board erred in reversing the WCJ's decision on remand to award her reimbursement for the expenses of deposing Dr. McCarren and Dr. Kahanovitz. Claimant maintains that her litigation costs should be awarded in their entirety in light of the fact that Employer's answer to her claim petition denied her entitlement to any wage loss benefits and that its termination petition alleged her full recovery. Claimant concludes that "all evidence was utilized by both parties in regard to each and every petition[,]" the costs of which are, therefore, reimbursable. Claimant Brief at 19.

Employer, in its cross-petition, argues that the Board erred in affirming the WCJ's award of Claimant's costs of deposing Dr. Freese and Furey.[9]

---

**(continued . . . )**

> If on appeal it appears that the [WCJ]'s award or disallowance of compensation was capricious or caused by fraud, coercion, or other improper conduct by any party in interest, the board may, grant a hearing de novo before the board, or one or more of its members or remand the case for rehearing to any [WCJ].

77 P.S. §856. This Court has recognized that "[t]o be capricious, the [WCJ]'s decision must not be merely an error in judgment course, but 'the adjudication must be so flagrant as to be repugnant to a man of reasonable intelligence.'" *Giant Eagle*, 651 A.2d at 217 (citing *Bullock v. Building Maintenance, Inc.*, 297 A.2d 520, 522 (Pa. Cmwlth. 1972)). Here, Claimant does not argue that the WCJ was acting "capriciously," or that her decision was "caused by fraud, coercion, or other improper conduct by any party in interest." Rather, she maintains that "only a new Judge can view the evidence without the preconceived bias already formulated." Claimant Brief at 17. This is not the standard set forth under Section 425 of the Act; therefore, we deny Claimant's request to remand the matter to a different WCJ.

[9] Employer also argues that the cost of the October 22, 2013, deposition of Claimant is not reimbursable because it was taken to contest Employer's termination petition, and Claimant did not prevail. Employer did not raise this issue in its petition for review, and the WCJ and the Board did not consider it. It is well settled that a party who proceeded before a Commonwealth agency under the terms of a particular statute may not raise upon appeal any question, other than the validity of the statute, that was not raised before the agency unless allowed by this Court upon due cause shown. 2 Pa. C.S. §703(a). Because Employer raised this issue for the first time on appeal to this Court, we are precluded from considering the issue.

22

Employer contends that Claimant deposed Dr. Freese "in an effort to expand [her] work injury[,]" and she did not succeed in doing so. Employer Brief at 46. Employer argues that Furey's deposition cost is also not reimbursable because it was taken to support Claimant's penalty petition, on which Claimant did not prevail. Employer further argues that Furey's testimony "was not taken to establish substantive facts … [but] to establish procedural facts." *Id*. at 48. Because Furey is not a medical expert or fact witness, his testimony cannot support Claimant's substantive claim for disability benefits and, therefore, the costs associated with his deposition are not reimbursable.

We first address the litigation costs for Furey's deposition. Section 440(a) of the Act[10] permits an award of reasonable litigation costs to a claimant when a matter at issue has been finally determined, in whole or in part, in his favor. *Jones v. Workers' Compensation Appeal Board (Steris Corporation)*, 874 A.2d 717, 720 (Pa. Cmwlth. 2005). When a claimant prevails on a petition under the Act, this Court will give deference to the WCJ's exercise of discretion in awarding reasonable litigation costs. *Braun Baking Company v. Workmen's Compensation Appeal Board (Stevens)*, 583 A.2d 860, 864 (Pa. Cmwlth. 1990).

---

[10] Section 440(a) of the Act provides, in pertinent part:

> In any contested case where the insurer has contested liability in whole or in part, … the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings….

77 P.S. §996(a).

Here, the WCJ found that the record did not "reflect an intention by Claimant to present the testimony of Mr. Furey only in connection with the Penalty Petition." WCJ Decision, 10/21/2015, at 3; Finding of Fact No. 6. The WCJ further found that Furey's deposition "corroborated Claimant's testimony regarding the periods of disability for which Claimant was seeking benefits in connection with the Claim Petition." WCJ Decision, 10/21/2015, at 4; Finding of Fact No. 6. Accordingly, the WCJ concluded that Furey's deposition supported the claim petition, which was granted in part; therefore, the cost was reimbursable. The Board affirmed the WCJ's award of expenses associated with Furey's deposition. We agree with the Board. Because Furey corroborated the dates of the specific periods of disability in Claimant's claim petition, the WCJ did not err in concluding that his testimony was related to a matter upon which Claimant prevailed.

Regarding Dr. Freese's deposition, the WCJ found that Claimant's counsel stated at the beginning of the deposition that he intended to use Dr. Freese's testimony "with respect to 'all of the petitions that are pending.'" WCJ Decision, 10/21/2015, at 4; Finding of Fact No. 7. The WCJ credited Dr. Freese's testimony in part that Claimant suffered back and leg pain as of April of 2013, which supported Claimant's claim that she was entitled to disability benefits at least through June 6, 2013. Since Claimant prevailed in part on her claim petition, we will not interfere with the WCJ's discretionary award of the fees associated with Dr. Freese's deposition, especially since the WCJ found the cost "reasonable." WCJ Decision, 6/26/2014, at 6; Finding of Fact No. 9.

24

The Board reversed the WCJ's remand decision awarding Claimant the costs of Dr. McCarren's and Dr. Kahanovitz's depositions. In doing so, the Board concluded that Dr. McCarren's deposition was not related to the part of the claim petition upon which Claimant prevailed. It further concluded that Dr. Kahanovitz's testimony, to the extent it confirmed Claimant sustained a lumbar strain, is not related to any contested issue because Employer accepted Claimant's work injury as a lumbar strain in the medical-only NCP. While we agree with the Board's analysis, in light of our decision to vacate the grant of Employer's termination petition, we must also vacate the Board's decision insofar as it reversed the WCJ's award of reimbursement for the costs associated with the depositions of Dr. McCarren and Dr. Kahanovitz. Should the WCJ, on remand, deny Employer's termination petition, Claimant could be entitled to an award of litigation costs incurred for those depositions.

## Conclusion

In summary, because the WCJ did not adequately explain her credibility determinations in accordance with the "reasoned decision" requirement of Section 422 of the Act, we vacate the Board's June 16, 2015, order insofar as it affirmed the WCJ's grant of Employer's termination petition. We remand the matter to the Board with an instruction to remand to the WCJ to issue a reasoned decision consistent with this opinion. We affirm the Board's July 28, 2016, order insofar as it affirmed the award of Claimant's costs of deposing Dr. Freese and Furey. Finally, we vacate the Board's July 28, 2016, order insofar as it reversed the award of Claimant's costs of deposing Dr. McCarren and Dr. Kahanovitz. The

25

Board shall instruct the WCJ on remand to reconsider the award of those costs when she issues a reasoned decision on Employer's termination petition.

_____
MARY HANNAH LEAVITT, President Judge

Judge Cosgrove concurs in the result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sarah Schock,              :
          Petitioner     :
                              :
        v.                 :    No. 1352 C.D. 2016
                              :
Workers' Compensation     :
Appeal Board (Brown's Super Stores),    :
          Respondent     :
                              :
                              :
Brown's Super Stores,      :
          Petitioner     :
                              :
        v.                 :    No. 1366 C.D. 2016
                              :
Workers' Compensation     :
Appeal Board (Schock),      :
          Respondent     :

# **O R D E R**

AND NOW, this 21st day of August, 2017, the June 16, 2015, order of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is hereby VACATED in part. The matter is REMANDED to the Board with specific instructions to further REMAND to the Workers' Compensation Judge to issue a decision consistent with the foregoing opinion. The Board's July 28, 2016, order is AFFIRMED in part and VACATED and REMANDED in part with specific instructions to further REMAND to the Workers' Compensation Judge to issue a decision consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge