# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel J. Cifelli,                                    :
                 Petitioner          :
                                              :

                 v.                          :   No. 523 C.D. 2023
                                                :   Submitted:  May 7, 2024
City of Philadelphia (Workers'                :
Compensation Appeal Board),              :
                  Respondent          :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED:  June 7, 2024

Daniel J. Cifelli (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) granting in part Claimant's Petition to Review Compensation Benefits (Review Petition) and denying Claimant's Petition to Reinstate Compensation Benefits (Reinstatement Petition) and Petition for Penalties (Penalty Petition).  The WCJ also terminated Claimant's workers' compensation (WC) benefits based on the City of Philadelphia's (Employer) credited medical evidence that Claimant's work-related injuries did not result in disability and had fully resolved by October 19, 2021.  On appeal, Claimant argues the Board's Order must be reversed because it applied the wrong standard of review where the WCJ capriciously disregarded essential evidence, did not make necessary findings of fact, and precluded Claimant from developing his evidentiary case, making the WCJ's

decision manifestly unreasonable. Claimant further asserts that Employer's expert medical witnesses' testimony was not legally competent and that the Board applied the wrong burden of proof and analysis on Claimant's mental injury claim. After careful review, we affirm.

## I. BACKGROUND

### A. *The Petitions*

On July 30, 2020, Claimant, a corrections officer for Employer, was involved in an altercation with an inmate at work, during which he was injured. Employer accepted, via a Notice of Temporary Compensation Payable which converted to a Notice of Compensation Payable (NCP) by operation of law, a work-related injury in the nature of a laceration under his right eye when he "was assaulted by an inmate who struck him in his face . . . ." (Reproduced Record (R.R.) at 12a, 15a.) Employer paid Claimant wage loss benefits until January 18, 2021, when it notified Claimant that it was suspending his benefits based on his return to work at no loss of earnings. (*Id.* at 18a.) On March 5, 2021, Claimant filed the Petitions at issue, asserting that his disability had recurred on February 17, 2021, when, despite his efforts, he could not work his time-of-injury position (Reinstatement Petition); he sustained injuries beyond the facial laceration accepted in the NCP (Review Petition); and Employer violated the Workers' Compensation Act[1] (Act) when it failed to pay him disability benefits despite there being an open NCP (Penalty Petition). (*Id.* at 21a-23a.) Employer filed answers to each, denying the Petitions' material allegations. (*Id.* at

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.1—2501-2710.

2

24a-29a.)  The Petitions were assigned to the WCJ,[2] who held multiple hearings at which the parties presented testimony and documentary evidence.

### B. Proceedings Before the WCJ

#### 1. Claimant's Evidence

Claimant testified by video and by deposition and presented the deposition testimonies of Surena Namdari, M.D. and Miriam Franco, Psy.D.  Claimant testified by deposition on June 25, 2021,[3] describing his work duties as a corrections officer and the July 30, 2020 incident as follows.  Claimant and his partner (Partner) were notified that something was wrong in one of the pods, and they went to investigate.  When they arrived, an  inmate (Inmate) told Claimant that he was having problems and needed his medications, and Claimant told the inmate he could help.  In the meantime, another officer initiated a "response," which resulted in all of the telephones in the pod being turned off, including those that were in use by other inmates.  (R.R. at 57a.)  Those other inmates became upset and began throwing items, like trashcans, at Claimant, Partner, and Inmate.  While Claimant attempted to secure Inmate, another officer arrived and sprayed pepper spray but instead of hitting Inmate, it hit Partner in the face, blinding him, and Claimant.  Inmate moved to fight with the other inmates, Claimant tried to put himself between the inmates, and more officers arrived on scene.  Inmate ultimately began to swing blindly and struck Claimant in the face, causing a laceration on the eye, and that "pretty much picked [Claimant] up off [his] feet." (*Id.* at 59a.)  Claimant was sent to the hospital for treatment, where he complained of face, neck, and upper body pain.  Claimant

---

[2] The Petitions were initially assigned to one WCJ but, following several hearings, they were reassigned to the WCJ that rendered the ultimate decision in this matter.

[3] Claimant's deposition testimony is found at pages 49a to 137a of the Reproduced Record. The WCJ summarized this testimony in Finding of Fact 6.

received follow-up treatment with Concentra, where he complained of face, neck, shoulder, and right-sided chest pain, as well as dizziness and anxiousness, and later from the Rothman Institute.

Claimant attempted to return to work on October 9, 2020, but felt panicked being there and experienced chest pain and difficulty focusing. He advised his supervisor of this, went home sick, and later went to the emergency room for dizziness, chest pain, and anxiety, where he was diagnosed with anxiety. Beginning March 2, 2021, Claimant has treated the anxiety with telemedicine sessions, with, among others, Collaborative Psychiatric Associates (Collaborative), with whom he had treated before. Claimant admitted to having been assaulted by inmates in the past, including in December 2020, when he sustained a concussion after an inmate struck him multiple times, but did not miss any work. Claimant returned to full-duty work on January 18, 2021, after being cleared to do so by Dr. Namdari, who was treating Claimant for his injuries to his sternum, and by panel physician, Dr. Ronald Wolfe. Claimant said he returned to work notwithstanding that he still had pain because he wanted to try to see if he could work. He did not feel exactly like himself at work, and after a few days, Claimant was forced to quarantine due to COVID-19. Claimant again returned to full-duty work on February 17, 2021, but felt anxious and had an overwhelming feeling of stress, worry, fear, and nervousness, which affected his ability to perform his job. Claimant did not return to work after that day.

Claimant testified before the WCJ via video on May 31, 2022,[4] reiterating the details of July 30, 2020, until the WCJ stopped him because the details had already been given in the deposition with which the WCJ was familiar. (R.R. at 892a.) Claimant repeated his testimony about his prior attempts to return to work, and the

---

[4] Claimant's testimony before the WCJ is found at pages 885a to 930a in the Reproduced Record. The WCJ summarized this testimony in Finding of Fact 13.

4

medical and psychiatric treatment he sought at those times. Claimant explained he had since tried different types of work, but has not found a permanent job, and did not believe he could return to his position with Employer due to his anxiety. Claimant agreed on cross-examination that the only treatment he sought from the emergency room immediately following the work incident was for the laceration. He also indicated that it was his emotional wellbeing that was keeping him out of work. (*Id.* at 910a.)

Dr. Namdari, a board-certified orthopedic surgeon, testified by deposition[5] about Claimant's description of the July 30, 2020 incident to him, Claimant's treatment since that time, and Dr. Namdari's examinations and treatment of Claimant. Dr. Namdari took over Claimant's care from Ryan Pfeifer, D.O. He opined that his examinations of Claimant revealed that Claimant's sternoclavicular joint was tender, and a magnetic resonance image of Claimant's chest revealed edema, consistent with that tenderness. Based on his review of Claimant's medical records and tests, and his physical examination of Claimant, Dr. Namdari diagnosed Claimant with "[r]ight shoulder sternoclavicular joint sprain in the setting of preexisting arthritis" and related that injury to the July 30, 2020 incident. (*Id.* at 307a-08a.) Dr. Namdari treated this injury with an ultrasound-guided cortisone injection into that joint, which helped to relieve Claimant's pain and decreased Claimant's symptoms. Dr. Namdari indicated that, at a December 15, 2020 visit, Claimant stated he felt he could return to work, and given Claimant's decrease in symptoms, Dr. Namdari signed a return-to-work form.

When Claimant returned to Dr. Namdari's office in May 2021, the pain had recurred due to the injection wearing off. At that time, Dr. Namdari restricted

---

[5] Dr. Namdari's deposition is found at pages 297a to 344a in the Reproduced Record. The WCJ summarized this testimony in Finding of Fact 7.

5

Claimant to modified duty based on Claimant's unchanged diagnosis and continued symptomology. Dr. Namdari saw Claimant several more times, with the last being on November 9, 2021, at which time Dr. Namdari noted that Claimant's October 12, 2021 injection had lasted only a week. Dr. Namdari opined that Claimant had preexisting arthritis in his sternoclavicular joint, which had been asymptomatic prior to the work injury, and was aggravated, and possibly accelerated, by the work injury. On cross-examination, Dr. Namdari agreed Claimant's emergency room records from July 2020 reflect that Claimant's vital signs were negative for neck or chest soreness, or chest tenderness, and Claimant denied having chest pain. He also agreed that Claimant's symptoms had improved by the December 15, 2020 examination and there were no longer any objective findings. He further acknowledged that Claimant did not seek treatment between the December 2020 office visit and May 2021 office visit.

Claimant attempted to obtain the records and deposition of panel physician Dr. Wolfe, who treated Claimant's injury, but Dr. Wolfe was not cooperative, including by not responding to a subpoena. After Dr. Wolfe would not cooperate, Claimant requested that an adverse inference be taken as to that testimony. (*Id.* at 874a-75a, 934a-35a.) It is unclear that Claimant took any formal steps to enforce the subpoena before asking for the adverse inference.

Dr. Franco, a psychologist, conducted an independent medical examination (IME) of Claimant, consisting of four video sessions. Claimant obtained Dr. Franco's opinion in lieu of the licensed social worker at Collaborative with whom Claimant had been treating for his anxiety disorder due to a concern that the social worker was not competent to provide medical opinions. (*Id.* at 436a.) In her deposition, Dr. Franco described her examinations and the history of the work

incident.[6]  Dr. Franco opined that, based on the results of the various tests she performed and Claimant's mental status examination, Claimant suffers from Post-Traumatic Stress Disorder (PTSD) due to his direct exposure to traumatic events on July 30, 2020.  Dr. Franco indicated Claimant's reaction to attempting to return to work in October 2020 was consistent with someone with PTSD.  Dr. Franco stated that Claimant was not capable of returning to full-duty work from a psychological standpoint due to his ongoing nightmares, agitation, and hyperarousal when reminded of work.  On cross-examination, Dr. Franco acknowledged that the first records she reviewed documenting Claimant's complaints of anxiety were from March 2, 2021.  Further, Dr. Franco's history did not reflect, as found in Claimant's treating provider's record of April 29, 2021, Claimant's testing positive for COVID-19, which made his anxiety and physical complaints worse.

### 2. Employer's Evidence

Employer presented the deposition testimonies of David Glaser, M.D., and Gladys Fenichel, M.D.[7]  Dr. Glaser, a board-certified orthopedic surgeon, performed an IME of Claimant on October 19, 2021, and testified about the history Claimant provided of both the incident and his treatment, his examination of Claimant, and his review of Claimant's treatment records, as follows.[8]  Claimant reported pain in his right arm and throbbing in his sternoclavicular region, and Dr. Glaser's physical

---

[6] Dr. Franco's deposition is found at pages 448a to 553a of the Reproduced Record.  The WCJ summarized this testimony in Finding of Fact 8.

[7] Employer also presented a fact witness, but the WCJ found that witness's testimony on the relevant issues to be equivocal due to a lack of personal knowledge of the events and rejected that witness's testimony that Claimant abandoned his job because Employer was aware of the work injury "and could presume that Claimant was absent from work due to his ongoing limitations, perceived or otherwise."  (WCJ Decision, Findings of Fact (FOF) ¶¶ 12, 18.)

[8] Dr. Glaser's deposition is found at pages 603a to 665a of the Reproduced Record.  The WCJ summarized Dr. Glaser's testimony in Finding of Fact 9.

7

examination of Claimant's neck, rotator cuff, labrum, and scapula was normal, with no weakness in his cervical spine. Dr. Glaser reviewed the diagnostic testing of Claimant's chest and cervical spine, which, he opined, showed an active process in the chest, rather than a change based on a single episode, due to the presence of degenerative arthritis, and the test of the cervical spine showed degenerative changes. Based upon his examination of Claimant and his review of Claimant's medical records, including those from the emergency room, Dr. Pfeifer, Dr. Namdari, and physical therapy, and the diagnostic tests, Dr. Glaser opined that Claimant sustained the laceration as a result of the work incident, that Claimant's right-sided sternoclavicular and cervical spine degenerative arthritis were not caused or aggravated by that incident, and that cervical pain is not an injury. Dr. Glaser disagreed that the nature of the incident could cause the sternoclavicular injury and, had it done so, he would have expected complaints of pain in that region to have appeared in the emergency room records or in Claimant's follow-up visits with Concentra, and they did not. Dr. Glaser opined that the laceration was the only work-related injury Claimant sustained and that Claimant required no restrictions on his return to full-duty work. Dr. Glaser further opined that if any injury beyond the laceration did occur, it had resolved by the time of the IME and that any injury to the sternoclavicular joint would not be disabling. (*Id.* at 627a-28a.)

Dr. Fenichel, a board-certified psychiatrist, performed an IME of Claimant on September 21, 2021, and testified by deposition regarding her examination of Claimant, review of Claimant's records, and conclusion that Claimant did not sustain any psychological injury as a result of the work incident.[9] Dr. Fenichel set forth the history of the incident as provided by Claimant, but noted that Claimant was difficult

_____

[9] Dr. Fenichel's deposition is found at pages 723a to 783a of the Reproduced Record. The WCJ summarized this testimony in Finding of Fact 10.

8

to talk to as he did not answer direct questions or give full, direct answers to questions she asked. Claimant discussed his personal life, and the stress he experienced growing up before he would discuss the work incident. (*Id.* at 738a-39a.) She discussed the aftermath of the work incident and Claimant's feelings about the incident, including expressing concern about being with inmates, that he did not feel like himself, and that he had always believed he was mentally strong. Claimant's medical records revealed the first reference of anxiety was in October 2020, at which time Concentra told Claimant to reach out to Employer, Collaborative's record of December 22, 2020, revealed improvement in Claimant's anxiety, and Concentra's record of January 12, 2021, likewise showed improvement in his anxiety, which was followed by Concentra's release of Claimant to full-duty work. Dr. Fenichel noted that neither Dr. Pfeifer's nor Dr. Namdari's records reflected any complaints of anxiety or other emotional issues. After learning that Claimant had been assaulted at work multiple times in the seven months before the July 30, 2020 incident, Dr. Fenichel concluded that this last incident was not an extreme traumatic incident that would give rise to PTSD. Instead, Dr. Fenichel related Claimant's anxiety to "a lifetime of abuse he experienced and was able to surmount," (WCJ Decision, Finding of Fact (FOF) ¶ 10f). Dr. Fenichel additionally testified that Claimant did not explain how what occurred on July 30, 2020, prevented him from proceeding with his normal life. Dr. Fenichel concluded that Claimant did not have anything, from a psychiatric perspective, that prevented him from performing his full-duty work, and did not need any psychological treatment for any injury that may have occurred as a result of the work incident, and a return to work would likely be good for Claimant.

9

### 3. The WCJ's Decision

Upon her review of the evidence, the WCJ credited Claimant's testimony in part, finding Claimant sustained work-related injuries beyond the laceration under his right eye, but rejecting Claimant's testimony that he was incapable of performing his pre-injury work due to any work-related injury. (*Id.* ¶ 14.) The WCJ accepted Dr. Namdari's opinion as to the nature of Claimant's physical injuries over Dr. Glaser's contrary opinion, finding that Claimant had preexisting arthritis in the sternoclavicular joint, which had been asymptomatic prior to the work incident that was aggravated by the work injury. (*Id.* ¶ 15.) The WCJ did not find Claimant's preexisting arthritis was accelerated by the work injury, noting Dr. Namdari indicated that this was only a possibility. (*Id.*) As to whether that aggravation was ongoing, the WCJ found Dr. Glaser's opinion that Claimant had fully recovered from all of his physical injuries credible, stating that Claimant's failure to treat or follow up on those injuries with Dr. Namdari for six months, despite alleged ongoing symptomology, was significant. (*Id.* ¶ 16.)

As for Claimant's alleged work-related psychological injuries, the WCJ found Dr. Fenichel's opinions that Claimant sustained no such injuries as a result of the July 30, 2020 incident more credible than Dr. Franco's contrary opinions and that where the two differed, Dr. Fenichel's opinions prevailed. (*Id.* ¶ 17.) The WCJ cited Dr. Fenichel's more comprehensive psychological examination of Claimant as the basis for the credibility determination. (*Id.*) The WCJ found that Dr. Fenichel "credibly analyzed whether PTSD was an appropriate diagnosis and found it was not based in large part on the fact that Claimant had been assaulted at work three times over a period of seven months, and thus, the events were not out of the ordinary." (*Id.*)

10

The WCJ did

> not find that Claimant suffered from any physical or psychological work injury after February 17, 2021[,] that disabled him from returning to work in his pre-injury job. In fact, Claimant's own testimony supports the conclusion that the only reason he did not return to work was his mindset, and not any physical injury. Dr. Namdari's testimony also supports this conclusion as []he had released him to return to his pre-injury job in December 2020.

(*Id.* ¶ 19.) Based on the credited evidence, the WCJ found "that all disability referable to the work injury ceased on October 19, 2021, thereby entitling Employer to a termination of benefits." (*Id.* ¶ 21.) Additionally, the WCJ found that Employer did not violate the Act in not paying wage loss benefits to Claimant after January 18, 2021, when Employer filed its notice of suspension, which Claimant did not challenge.[10] (*Id.* ¶ 20.)

The WCJ concluded that Claimant did not meet his burdens of proof on the Reinstatement and Penalty Petitions and, therefore, denied those Petitions. (WCJ Decision, Conclusions of Law ¶¶ 2, 5.) In contrast, the WCJ held that Claimant did meet his burden of proving that he suffered an additional work injury, the aggravation of his sternoclavicular arthritis, but that this injury did not disable him from his job and had fully resolved by October 19, 2021. Thus, the WCJ granted the Review Petition in part to add the sternoclavicular injury but terminated benefits as of October 19, 2021. (*Id.* ¶ 3, Order.) The WCJ found Employer's contest

---

[10] The WCJ also found that Claimant had a disfiguring scar from the laceration and awarded 12 weeks of wage loss benefits to compensate for the scar, which, on appeal, the Board modified to award 25 weeks of wage loss benefits based on its in-person view of Claimant. (FOF ¶ 22; WCJ Decision, Conclusion of Law ¶ 4; Board Opinion (Op.) at 20-21.) This part of the Board's decision was not appealed.

11

reasonable and, as Claimant prevailed on the Review Petition, directed Employer to pay Claimant's litigation costs. (*Id.* ¶¶ 6-7.)

## C. The Board's Opinion

Claimant appealed to the Board, making substantially the same arguments as he does to this Court. (*See* R.R. at 995a-1002a.) In his appeal, Claimant focused on evidence he claims the WCJ "omitted" from numerous Findings of Fact, making them inaccurate and reflecting a capricious disregard of the evidence, and how the WCJ prevented him from making his case. Claimant also asserted the WCJ did not provide an adequate explanation for the credibility determinations and argues that the testimony of Dr. Glaser and Dr. Fenichel, who did not "understand the physicality of the work incident," was not legally competent, rendering Employer's challenge unreasonable and requiring an award of attorney's fees. (*Id.* at 1000a-02a.) The Board disagreed on all points and affirmed the WCJ's decision, concluding that the WCJ's findings were supported by substantial evidence and that the WCJ committed no error of law. As part of this determination, the Board held Claimant's alleged PTSD had to be evaluated under the mental-mental standard, which required him to show that the PTSD was the result of an abnormal working condition. (Board Opinion (Op.) at 3-4, 17 (citing, e.g., *Payes v. Workers' Comp. Appeal Bd. (Pa. State Police)*, 79 A.3d 543 (Pa. 2013)).) Claimant now petitions this Court for review.[11]

---

[11] This Court's review "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

12

**II. DISCUSSION**

Claimant asserts multiple bases for why the Board and the WCJ allegedly erred or abused their discretion in this matter and the denial of his Petitions should be reversed.

*A. The Standards Used by the Board*

Claimant first argues the Board failed to perform proper appellate review of the WCJ's decision by focusing only on whether the Findings of Fact were supported by substantial evidence, which Claimant appears to concede.[12] (Claimant's Brief (Br.) at 25 ("[B]y performing only a 'substantial evidence test', the Board did identify excerpts of testimony sufficient to support the outcome reached.") (emphasis omitted).) The error, Claimant asserts, was in the Board's not reviewing the record as a whole in order to address Claimant's arguments that the WCJ capriciously disregarded overwhelming and unrefuted evidence.

Reviewing the Board's Opinion, we discern no error in the standard the Board applied. The Board's appellate review, like ours, specifically requires it to determine whether the WCJ's findings of fact are supported by substantial, competent evidence. *Bethenergy Mines v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). It is well settled that the Board, like this Court, is bound by a WCJ's findings if they are supported by competent, substantial evidence. *Id.* When performing a substantial evidence analysis, the evidence and every reasonable inference deducible from the evidence must be viewed in the light most favorable to the prevailing party. *Wawa v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 408 (Pa. Cmwlth. 2008). "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *Id.* at 407 n.4.

---

[12] We have rearranged and combined Claimant's arguments for ease of discussion.

13

In cases where both parties present evidence, the critical inquiry is whether there is evidence to support the findings actually made, and it is irrelevant whether the record contains evidence to support findings other than those made by a WCJ. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). A WCJ, as the factfinder, has the sole authority to assess credibility, to resolve conflicting evidence, and to determine the weight given to the evidence. *Id.* at 1155-56. Accordingly, a WCJ may reject, in whole or in part, the testimony of any witness, even if that testimony is uncontradicted. *Id.* at 1156.

In applying the above standard, the Board did not ignore the allegations of capricious disregard, rather it recognized that

> [w]here there is substantial evidence to support the WCJ's findings of fact and the findings support the conclusions, **only in rare instances should the adjudication be disturbed on the basis of capricious disregard of material, competent evidence**. *Leon E. Wintermyer, Inc. v. W[orkers'] C[omp.] A[ppeal] B[d.] (Marlowe)*, 812 A.2d 478[, 487 n.14] (Pa. 2002). **A WCJ's express consideration and rejection of evidence is not capricious disregard**. *Williams v. W[orkers'] C[omp.] A[ppeal] B[d.] (USX Corp[.]-Fairless Works)*, 862 A.2d 137[, 145] (Pa. Cmwlth. 2004).

(Board Op. at 4-5 (emphasis added).) The Board then summarized the testimony of the witnesses, reviewed the WCJ's credibility determinations, and expressly concluded there was no capricious disregard by the WCJ in this matter. Accordingly, we cannot say that the Board failed to perform the proper review, and this is not a basis to reverse.

Claimant also argues the Board erred in applying the wrong standard in reviewing his mental injury claim when it evaluated whether he satisfied the mental/mental standard of proof, rather than the physical/mental standard. Employer asserts the Board's reference to the mental/mental standard was harmless error

14

because that was not the standard applied by the WCJ. According to Employer, the WCJ did not examine whether the July 30, 2020 incident was "abnormal" but whether it supported, in the first instance, the diagnosis of PTSD.

To succeed on a review petition, a claimant must, as they do on a claim petition, establish all the elements required to support an award of WC benefits, including that an injury occurred, the injury was caused by their work duties, and they suffered disability (a loss of earnings) from that injury. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). Mental injuries are categorized three ways: mental/physical injuries, where a psychological stimulus results in a physical injury; mental/mental injuries, where psychological stimulus results in a psychological injury; and physical/mental, where a physical stimulus results in a psychological injury. *Ryan v. Workman's* [sic] *Comp. Appeal Bd. (Cmty. Health Servs.)*, 707 A.2d 1130, 1135 (Pa. 1998). In the situation where the claimed work injury is a mental/mental injury, which the Board reasoned was the case here, "a claimant must prove by objective evidence that he has suffered a psychic injury and that such injury is other than a subjective reaction to normal working conditions." *Davis v. Workers' Comp. Appeal Bd. (Swarthmore Borough)*, 751 A.2d 168, 174 (Pa. 2000). Claimant contends his PTSD would fall under the physical/mental standard, which does not require a showing of an abnormal working condition.

Thus, to establish an entitlement to WC benefits, Claimant first had to prove that he suffered the alleged PTSD, and, if he did so, **then** the issue of which standard – the physical/mental or the mental/mental standard–applies would become relevant. *Id.* Here, though, because the WCJ credited Dr. Fenichel's opinion that Claimant did **not** suffer PTSD over Dr. Franco's contrary opinion, the questions of the work-

15

relatedness of that alleged injury, and which category of mental injury it falls into, were not at issue. Accordingly, if the Board erred in invoking the mental/mental standard, any such error was harmless because Claimant did not establish that he sustained PTSD in the first instance.

## B. Capricious Disregard/Preclusion of Evidence

Claimant argues that the WCJ's capricious disregard of evidence and preclusion of relevant evidence renders the WCJ's findings incomplete. Claimant's arguments are predicated on his belief that the WCJ's failure to identify and reference the admitted exhibits, or his request for an adverse inference due to Dr. Wolfe's refusal to cooperate, in the decision's list of exhibits meant they were not considered. Claimant also contends that the WCJ's factual findings present a distorted summary of the facts and testimony, particularly as to the nature of the July 30, 2020 incident. Relatedly, Claimant argues the WCJ capriciously disregarded essential evidence needed to make the findings of fact "necessary" for a correct understanding of the incident and the lack of these detailed findings affected the WCJ's credibility determinations.

Employer argues there is no capricious disregard here, and the WCJ's decision allows for effective judicial review by summarizing the relevant evidence and identifying the credible witnesses, and offers the grounds for the credibility determinations. *See Supervalu, Inc. v. Workers' Comp. Appeal Bd. (Bowser)*, 755 A.2d 715, 721-22 (Pa. Cmwlth. 2000). No line-by-line analysis of the evidence and its effect on the ultimate conclusion is needed, Employer asserts; instead, all that is needed is for the WCJ to make the findings necessary for her determination. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 29-30 (Pa. Cmwlth. 2005). Employer argues that Claimant's capricious disregard

arguments are really challenges to the WCJ's credibility and evidentiary weight determinations, which are not subject to review on appeal.

Review for capricious disregard of competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court. *Wintermyer*, 812 A.2d at 487. Capricious disregard has been described as a deliberate disregard of competent evidence which one of ordinary intelligence could not possibly have avoided in reaching a result. *Arena v. Packaging Sys. Corp.*, 507 A.2d 18, 20 (Pa. 1986). This limited aspect of appellate review should not be applied in a way that would intrude upon the fact-finding role and discretionary decision-making authority of the agency. *Wintermyer*, 812 A.2d at 487-88. "To be capricious, the [WCJ's] decision must not be merely an error in judgment course, but []the adjudication must be so flagrant as to be repugnant to a man of reasonable intelligence.[]" *Giant Eagle, Inc. v. Workmen's Comp. Appeal Bd. (Bensy)*, 651 A.2d 212, 217 (Pa. Cmwlth. 1994) (internal quotation marks and citation omitted).

We begin with Claimant's argument that a capricious disregard occurred because the WCJ did not include the exhibits admitted in the decision's list of exhibits or reference his request for an adverse inference from Dr. Wolfe's refusal to cooperate in the decision or summarize those exhibits and that request in the findings of fact. We find that argument unpersuasive. The exhibits Claimant cites are included in the certified record, reflecting their admission, and many were either referenced in witness testimony or discussed by counsel during the proceedings. Claimant's request for an adverse inference is likewise in the certified record.[13] That

---

[13] Notably, Claimant does not appear to argue, as he did to the Board, that the denial of the adverse inference was erroneous. Rather, he just points to the lack of reference to his request reflects the WCJ's capricious disregard in this matter.

17

they were not included in the decision's exhibit list appears to be an oversight, particularly where **none** were identified in that list. As for the WCJ's failure to specifically reference that evidence in the findings, some of the evidence was referenced, as they were medical records discussed and relied upon by the various experts whose testimony was summarized by the WCJ. (*See, e.g.*, FOF ¶¶ 7a, 8c, 9b, 9d, 10c.) Moreover, a WCJ is not required to provide a line-by-line explanation of the evidence presented and how that evidence may have affected the ultimate decision. *Acme Mkts., Inc. v. Workers' Comp. Appeal Bd. (Brown)*, 890 A.2d 21, 26 (Pa. Cmwlth. 2006). Accordingly, this potential oversight does not meet the high standard necessary for reversing based on a capricious disregard of overwhelming evidence.

Turning to Claimant's arguments that the findings relating to the nature of the incident were distorted thereby resulting in an incorrect understanding of the incident, we disagree. These assertions, at their essence, challenge the WCJ's description of the incident in Findings of Fact 6a and 13a. Finding of Fact 6a states: "On July 30, 2020, [Claimant] and his partner responded to a call involving a combative [I]nmate. [Claimant] became entangled in an altercation involving more than one individual and was struck in his face." (FOF ¶ 6a.) Finding of Fact 13a provides: "Claimant recounted the July 30, 2020 event at work, when he was struck by [I]nmate. Altercations with prisoners happened with some regularity." (*Id.* ¶ 13a.) Claimant maintains that his testimony was far more detailed, and reflected the gravity of the incident, and the WCJ, having not rejected that testimony, should have made similarly detailed findings. Had the WCJ done so, Claimant posits that different credibility determinations would likely have been made.

18

Claimant does not, nor can he, assert that the WCJ's findings are not supported by substantial evidence because Claimant's testimony supports this general description of the July 30, 2020 incident and that altercations with inmates occur with regularity, as Claimant had been involved in multiple altercations, some of which resulted in injuries. (R.R. at 65a-67a, 70a-71a.) Claimant's argument that different findings should have been made essentially seeks to have the Court reweigh the evidence. The WCJ, as the factfinder, has the sole authority to assess credibility, to resolve conflicting evidence, and to determine the weight given to the evidence. *Hoffmaster*, 721 A.2d at 1155-56. Here, the WCJ reviewed the record and summarized the evidence in findings of fact that she believed necessary to make her decision and was not required to perform a line-by-line analysis of the evidence presented. *Id.* To the extent Claimant believes this would have changed the credibility determinations, the capricious disregard standard should not be applied in a way that would intrude upon the fact-finding role and discretionary decision-making authority of the agency, which is what Claimant requests we do. *Wintermyer*, 812 A.2d at 487-88. We discern no deliberate "disregard" of the evidence, *id.*, or a WCJ's decision that is so "repugnant" that it must be reversed, *Giant Eagle, Inc.*, 651 A.2d at 217.

Finally, Claimant argues the WCJ precluded him from presenting his case by refusing to allow him "to more graphically describe the incident" at the final hearing. (Claimant's Br. at 29.) Claimant's initial deposition testimony described the July 30, 2020 incident in great detail, some of which he began to repeat during the last hearing. (R.R. at 55a-61a, 890a-91a.) That testimony was also reiterated, at least in part, during the questioning of Dr. Fenichel. (*Id.* at 760a-64a.) We discern no abuse of discretion or capricious disregard in the WCJ's decision not to allow what she

19

viewed would be cumulative testimony. *See Marincov v. Workmen's Comp. Appeal Bd. (City of Washington)*, 454 A.2d 670, 673-74 (Pa. Cmwlth. 1983) (finding no abuse of discretion in denying a rehearing because there was nothing to indicate that the proposed testimony to be offered "would be anything other than cumulative with respect to that already adduced").

### C. Employer's Witnesses

Claimant asserts the WCJ erred in relying on Employer's witnesses' testimony and in explaining why she credited those witnesses over Claimant's experts. Related to Claimant's capricious disregard arguments is his position that Dr. Fenichel's and Dr. Glaser's testimonies were not legally competent. Key to that argument is his contention that neither Dr. Fenichel nor Dr. Glaser had a correct understanding of the July 30, 2020 incident or of Claimant's medical records. Claimant further asserts that Dr. Glaser's testimony is not competent because he did not accept that Claimant sustained any injury to his sternoclavicular joint, which the WCJ ultimately accepted.

Employer asserts generally that Claimant's competency arguments are really challenges to the weight the WCJ gave to the witnesses' testimony, which is for the WCJ to determine. As for Dr. Glaser's opinion related to the existence of a sternoclavicular joint condition, Employer argues Dr. Glaser did not dispute the existence of a condition of that joint, only that this condition was acute, as Dr. Namdari concluded, rather than chronic, as Dr. Glaser opined. It maintains that Dr. Glaser's testimony that he found no evidence of impairment attributable to Claimant's sternoclavicular condition during his examination of Claimant on October 19, 2021, which the WCJ credited, supported termination based on full recovery by that date.

20

The Board's Opinion accurately sets forth the legal principles related to these arguments.

> Whether medical opinion evidence is competent or equivocal is a question of law based upon a review of the opinion or testimony as a whole. *Lewis v. W[orkmen's] C[omp.] A[ppeal] B[d.] (Pittsburgh Bd. of Educ.)*, 498 A.2d 800[, 803] (Pa. 1985). In conducting such a review, a final decision should not rest upon a few words taken out of context. *Id.* A medical expert's opinion is **not incompetent unless it is based solely on inaccurate or false information**. The opinion **must be viewed as a whole**, and even inaccurate information will not render the opinion incompetent unless it is dependent on the inaccuracies. *Casne v. W[orkers'] C[omp.] A[ppeal] B[d.] (Stat Couriers, Inc.)*, 962 A.2d 14[, 16] (Pa. Cmwlth. 2008) (citations omitted).

(Board Op. at 4 (emphasis added).) The question of competency is one of law, fully reviewable on appeal. *Cerro Metal Prods. Co. v. Workers' Comp. Appeal Bd. (Plewa)*, 855 A.2d 932, 937 (Pa. Cmwlth. 2004). Applying these standards, the Board disagreed "that the testimony of Dr. Glaser and Dr. Fenichel was not competent because they did not have a correct history and did not fully appreciate the magnitude of the incident." (Board Op. at 16.) We agree with the Board's assessment.

Contrary to Claimant's contention, the history Dr. Glaser and Dr. Fenichel had of the incident was that which Claimant himself provided. Both experts testified similarly to Claimant regarding the incident, albeit more briefly, and their reports reflect that they both reviewed Claimant's June 25, 2021 deposition describing the incident. (R.R. at 610a-12a, 708a, 729a-30a, 740a-43a, 760a-64a, 807a.) Notably, Dr. Fenichel testified that Claimant was very difficult to talk to about the incident, refusing to answer direct questions and preferring to discuss his personal history rather than the incident. (*Id.* at 742a-43a.) Thus, it cannot be said that their opinions, when taken as a whole, were "solely based on inaccurate or false information" and

21

not legally competent for that reason. *Casne*, 962 A.2d at 16. That Claimant believes Employer's experts did not fully appreciate the incident's magnitude relates, in our view, more to the weight given to that testimony, than its competence. Issues of evidentiary weight are for the WCJ to decide, not this Court. *IA Constr. Corp. v. Workers' Comp. Appeal Bd. (Rhodes)*, 139 A.3d 154, 161 (Pa. 2016) ("Pennsylvania appellate tribunals accord broader deference to fact-based determinations of [WCJs,]" which includes issues of credibility and evidentiary weight.).

As for Claimant's assertion that Dr. Glaser's testimony was incompetent because he did not accept that Claimant had a sternoclavicular joint injury, a close review of Dr. Glaser's testimony belies Claimant's argument. The testimony of a medical expert who refuses to accept the existence of an accepted or adjudicated injury is not legally competent to support a termination, *O'Neill v. Workers' Compensation Appeal Board (News Corp. Ltd.)*, 29 A.3d 50, 57 (Pa. Cmwlth. 2011); *Hall v. Workers' Compensation Appeal Board (America Service Group)*, 3 A.3d 734, 740 (Pa. Cmwlth. 2010), but we are not convinced that this is what happened here. Notably, at the time Dr. Glaser testified, no injury beyond a facial laceration had been accepted and no injury had been adjudicated. Dr. Glaser did not state that Claimant was not suffering a sternoclavicular joint condition; rather, he opined that the condition was not related to the work incident and that, based on his examination, the condition was not disabling nor precluded Claimant from returning to full-duty work. (R.R. at 625a-29a.) This conclusion was supported by Dr. Namdari's findings that, as of Claimant's December 15, 2020 examination, **no objective findings of the issue were present** and Claimant could return to full-duty work, testimony to which the WCJ pointed in finding that Claimant was no longer entitled to WC benefits.

22

(*Id.* at 335a-36a; FOF ¶¶ 7d, 19.) The WCJ, as factfinder, could, and did, reject that part of Dr. Glaser's testimony as to the work incident's effect on Claimant's sternoclavicular joint in favor of Dr. Namdari's testimony. However, the WCJ, as factfinder, was also free to accept Dr. Glaser's testimony that Claimant had no orthopedic findings at the time of his examination, was fully recovered from any injury sustained in the July 30, 2020 incident, was not disabled by that condition, and could return to work, over Dr. Namdari's contrary testimony. The WCJ is authorized to accept or reject the testimony of any witness, including medical expert witnesses, **in whole or in part**. *Minicozzi*, 873 A.2d at 28.

The termination of benefits may be granted where a medical expert unequivocally and credibly testifies that the claimant is fully recovered from the work injury, that there are no objective findings to support any ongoing complaints, and that the claimant can return to work without restrictions. *Inservco Ins. Servs. v. Workers' Comp. Appeal Bd. (Purefoey)*, 902 A.2d 574, 579 (Pa. Cmwlth. 2006). Termination may also be granted if a medical expert testifies that any remaining restrictions or disability experienced by a claimant are not related to the work injury. *Campbell v. Workers' Comp. Appeal Bd. (Antietam Valley Animal Hosp.)*, 705 A.2d 503, 507 (Pa. Cmwlth. 1998). Dr. Glaser's credited opinion recognized the existence of a sternoclavicular joint issue, but he opined that by October 19, 2021, there was no objective evidence of that condition, which was adjudicated as an aggravation of the sternoclavicular joint arthritis, Claimant had no orthopedic impairments related to the work incident, and Claimant could return to his full-duty position without restrictions related to his musculoskeletal system. (R.R. at 626a-29a, 638a.) This is sufficient to support the termination of benefits. *Shepherd v. Workmen's Comp. Appeal Bd. (Shepherd)*, 443 A.2d 862, 863-64 (Pa. Cmwlth. 1982).

23

Claimant also argues that the WCJ did not adequately explain why Drs. Glaser and Fenichel were more credible than Drs. Namdari and Franco. This argument relates to Section 422(a) of the Act's requirement that a WCJ issue a reasoned decision, 77 P.S. § 834,[14] and the part of that requirement that a WCJ adequately explain the resolution of conflicting evidence. Where a witness testifies before the factfinder, allowing the WCJ to assess the witness's demeanor, the "mere conclusion as to which witness was deemed credible . . . could be sufficient to render the decision adequately reasoned." *Minicozzi*, 873 A.2d at 30. But, where the conflicting testimony of the witnesses occurs in depositions, the WCJ must articulate some **objective** basis for the credibility determination. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1053 (Pa. 2003). "[T]here are countless objective factors which may support the decision to accept certain evidence while []rejecting or discrediting competent [conflicting] evidence.[]" *Id.* (quotation marks and citation omitted). A "case-specific, if brief, explanation for [a] credibility determination" may meet the requirements of Section 422(a) if "they [are] sufficient to allow for adequate review under the applicable review standards . . . ." *Id.* at 1050.

---

[14] Section 422(a) states, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. . . . The adjudication shall provide the basis for meaningful review.

77 P.S. § 834.

24

Here, the WCJ's relevant credibility determinations are found in Findings of Fact 14 through 17. The WCJ found Dr. Namdari and Dr. Glaser credible in part and not credible in part, based in part on her partial acceptance and rejection of Claimant's testimony. In rejecting Dr. Namdari's testimony regarding an acceleration of Claimant's sternoclavicular joint arthritis, the WCJ cited Dr. Namdari's testimony that such acceleration was merely a possibility and, therefore, legally insufficient to support that injury. (FOF ¶ 15.) The WCJ credited Dr. Glaser's testimony rejecting, based on his examination, Claimant's alleged ongoing inability to perform his work duties due to his physical injuries, and concluding that Claimant had fully recovered from any physical injuries relating to the work incident, pointing to Claimant's failure to treat or follow up with Dr. Namdari for six months, even though Claimant maintained he had ongoing symptomology. (*Id.* ¶ 16.) In crediting Dr. Fenichel's opinions over those of Dr. Franco, the WCJ reasoned that "Dr. Fenichel's psychiatric exam of Claimant was more comprehensive that Dr. Franco's." (*Id.* ¶ 17.)

In addition to the reasons provided in these findings, the WCJ described in the summaries of witnesses' testimony bases that support the credibility determinations. For example, the objective reason proffered by the WCJ in crediting Dr. Glaser's testimony is based on Dr. Namdari's admissions that no treatment occurred between December 15, 2020, and May 21, 2021, seemingly contradicting the allegations of an ongoing injury. (*See id.* ¶¶ 7d, 16.) As for crediting Dr. Fenichel's testimony over Dr. Franco's testimony, the WCJ observed in the summaries for those witnesses' differences in their review of Claimant's records and/or their examination of Claimant, pointing to the lack of history taken by Dr. Franco about Claimant's COVID-19 infection, that appeared to worsen Claimant's anxiety. (*See id.* ¶¶ 8b-c,

10c.) A review of Dr. Fenichel's deposition testimony and report reveals that she appears to have engaged in a more thorough examination of Claimant and his medical records, including those of Dr. Wolfe, Dr. Pfeifer, Dr. Namdari, and Collaborative, than Dr. Franco, whose report did not reflect any specific review of the records related to Claimant's physical injury to determine if they could establish PTSD. (*Compare* R.R. at 570a-80a *with id.* at 802a-13a.) The failure of a medical expert to review all of a claimant's medical records is something that can go to the weight of that testimony. *Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.)*, 923 A.2d 1197, 1203 (Pa. Cmwlth. 2006). Accordingly, the reasons provided by the WCJ for the credibility determinations are "case-specific" and objective, not based on a subjective view of the witnesses (except where allowed, such as for Claimant), and allow for adequate appellate review. *Daniels*, 828 A.2d at 1050. Therefore, we are not persuaded that the WCJ failed to satisfy the requirements set forth in Section 422(a) and *Daniels* for a reasoned decision.

### D. Whether the WCJ's Decision was Manifestly Unreasonable

The above errors, Claimant argues, taken together render the WCJ's decision manifestly unreasonable because that decision is without a rational basis or scheme and, therefore, reflects an abuse of discretion and must be reversed. *Giant Eagle, Inc.*, 651 A.2d at 217-18. However, finding no errors or abuses of discretion by the WCJ, we cannot say that the WCJ's decision was manifestly unreasonable.[15]

---

[15] Claimant also asserts that, if he prevails in his appeal, the matter should be remanded for the award of counsel fees. However, having not prevailed on his arguments, no remand is warranted.

## III.  CONCLUSION

For the foregoing reasons, Claimant has not established that either the WCJ or the Board erred or abused their discretion in this matter.  Accordingly, the Board's Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** President Judge

27

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel J. Cifelli,                  :
           Petitioner     :
                                 :
          v.                  :    No. 523 C.D. 2023
                                 :
City of Philadelphia (Workers'       :
Compensation Appeal Board),        :
           Respondent    :

## O R D E R

NOW, June 7, 2024, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge